UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:24-cv-00413

ERIC A. KNAPP,
On behalf of himself and all
Other Florida citizens similarly situated,

                                    Plaintiff,                    **CLASS REPRESENTATION**

vs.

VGW HOLDINGS LIMITED, VGW
MALTA LIMITED, VGW LUCKYLAND INC.,
VGW GP LIMITED, FIDELITY NATIONAL
INFORMATION SERVICES, INC., a Florida
Corporation, WORLDPAY, LLC, a Delaware
a Delaware Limited Liability Company, and
WORLDPAY, INC.,

                                    Defendants.
_____/

**AMENDED COMPLAINT**

Plaintiff ERIC A. KNAPP brings this action on behalf of himself and all

other citizens of the State of Florida similarly situated ("hereafter Florida citizens")

and Plaintiff sues Defendants FIDELITY NATIONAL INFORMATION

SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY,

LLC., and WORLDPAY, INC., together with VGW HOLDINGS LIMITED,

1

including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC.,

and VGW GP LIMITED.

## PARTIES JURISDICTION AND VENUE

1.      This court has jurisdiction over the subject matter of this action because it is

a court of general jurisdiction and the damages sought by Plaintiff and on behalf of

a group of Florida residents (hereafter referred to as the "Class") exceed $50,000,

the jurisdictional threshold for this court.

2.      This court has personal jurisdiction over FIDELITY NATIONAL

INFORMATION SERVICES, INC. because it is a Florida corporation with its

headquarters in Duval County, Florida and it conducts business in Seminole

County, Florida.  Defendant FIDELITY NATIONAL INFORMATION

SERVICES, INC. is also known as FIS, and is hereafter referred to in this

Complaint as "FIS". WORLDPAY, LLC is a Delaware Limited Liability Company

that at all times material to this action has been owned in whole or in substantial

part by FIS.   FIS fully controlled and operated WORLDPAY, LLC as the arm or

agent of FIS to provide payment processing services to VGW HOLDINGS

LIMITED  and its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND

INC., and VGW GP LIMITED.  Prior to June 30, 2020, WORLDPAY, INC.

provided payment processing services for VGW HOLDINGS LIMITED  and its

subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP

LIMITED, and based on information and belief from the representations of counsel for WORLDPAY, INC. and FIS, WORLDPAY, INC. merged into WORLDPAY, LLC on June 30, 2020.

3.    VGW HOLDINGS LIMITED is an Australian company that fully controls and operates its subsidiary companies, VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED.  VGW HOLDINGS LIMITED has admitted in its audited financial statements that it fully controls and operates its subsidiary companies.  Likewise, VGW HOLDINGS LIMITED operates an internet website "vgwplay.com" that directly links consumers to its subsidiary companies' internet casino operations.  VGW HOLDINGS LIMITED, along with these subsidiary companies, actively operate and market internet gambling websites within the State of Florida and Seminole County, which websites and operations are unpermitted and illegal under Florida law.

4.    VGW LUCKYLAND INC. is a Delaware corporation. VGW LUCKYLAND INC. maintains an office in San Francisco California.  VGW LUCKYLAND INC. conducts business throughout Seminole County and the state of Florida.

5.    VGW MALTA LIMITED is a company formed in the Island of Malta and also maintains offices in Australia. VGW MALTA LIMITED conducts business throughout Seminole County, and the state of Florida.

6.     VGW GP LIMITED is a company formed in the Island of Malta.  VGW GP

LIMITED conducts business throughout Seminole County, and the state of Florida.

7.     This court has personal jurisdiction over VGW HOLDINGS LIMITED,

including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC.,

and VGW GP LIMITED pursuant to Section 48.193 of the Florida Statutes.   VGW

HOLDINGS LIMITED, the parent company of  VGW MALTA LIMITED, VGW

LUCKYLAND INC., and VGW GP LIMITED actively controls and actively

operates these subsidiaries and exercises sufficient control over the subsidiaries to

render VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP

LIMITED as agents or alter egos of  VGW HOLDINGS LIMITED.

9.     Hereafter  VGW HOLDINGS LIMITED is referred to as "VGW

HOLDINGS".  VGW MALTA LIMITED is referred to as "VGW MALTA", VGW

LUCKYLAND INC., is referred to as "VGW LUCKYLAND" and VGW GP

LIMITED is referred to as "VGW GP".  Throughout this Complaint when Plaintiff

refers to VGW HOLDINGS, VGW MALTA, VGW LUCKYLAND, and VGW GP

collectively, Plaintiff identifies these combined Defendants acting in concert as

"VGW".

10.    Venue is proper in Seminole County pursuant to Sections 47.011 and 47.051

of the Florida Statutes because a substantial part of the events giving rise to the

claims asserted herein occurred in Seminole County, Florida and because VGW committed acts that are the basis of this lawsuit in Seminole County, Florida.

11.     Plaintiff is a natural person and citizen of the state of Florida who resides in Seminole County, Florida at all times material to this Complaint.

12.     Between November 17, 2023, and November 29, 2023, Plaintiff registered and entered into internet casino websites operated by VGW MALTA, VGW LUCKYLAND, and VGW GP, which are owned and controlled by VGW HOLDINGS.  During that period Plaintiff lost approximately $1,000, playing the casino games of chance that are promoted and operated by VGW on these internet websites.

13.     Plaintiff is authorized to bring this action because Plaintiff was damaged by the illegal gambling operations conducted by VGW, and because Plaintiff has not agreed to any form of arbitration or alternative dispute resolution.  This is because in accordance with the Terms of Service contained in VGW's websites, by November 29, 2023, Plaintiff timely "opted out" of any obligations to participate in arbitration or alternate dispute resolution.  Copies of Plaintiff's notices are attached as Composite Exhibit "A" and incorporated as part of this Complaint by reference.

14.     Plaintiff is also authorized to bring this action on behalf of other similarly situated Florida citizens who have gambled on VGW websites.

15.    VGW actively promotes and operates internet gambling websites that target citizens of the State of Florida or Florida citizens and the actions of VGW constitute conducting business within the state of Florida and Seminole County.

16.    Defendant FIS is a Florida corporation that, at all times material to this Complaint, has fully controlled and operated through its wholly owned subsidiary company, WORLDPAY, LLC.  FIS and WORLDPAY, LLC. provided payment processing services to VGW for billions of dollars in gambling transactions that have taken place in the state of Florida, and WORLDPAY, INC. likewise provided such services to VGW at least until June 30, 2020, when it appears to have merged into WORLDPAY, LLC.  By definition and its own admissions, Defendant FIS is a "backer" "vendor" or "otherwise" that has an interest in the gambling transactions of VGW, as defined in Section 849.29 of the Florida statutes.   A copy of an advertisement describing the relationship between FIS and VGW is attached as Exhibit "B" and is incorporated as part of this Complaint.  Hereafter, WORLDPAY, INC., WORLDPAY, LLC and FIS are collectively referred to as "FIS".  FIS is subject to suit under Section 849.29 of the Florida Statutes and due to FIS' actions of conspiring with VGW to conduct illegal gambling transactions, FIS is subject to suit for violations of Florida's Unfair and Deceptive Trade Practices Act (Section 849.094 and Section 501.201 et seq), and violations of the Civil Remedies for Criminal Practices Act (Section 772.104), and to defraud Plaintiff and Florida

citizens.  Alternatively, FIS has been participating in aiding and abetting a
conspiracy conducted by VGW.

## **INTRODUCTION**

17.    VGW HOLDINGS actively owns and operates three companies as its agents
or alter egos to conduct gambling operations in the State of Florida.  These
companies are VGW MALTA, VGW LUCKYLAND, and VGW GP.   These
companies claim to be video game development business entities and operators of
a "social casino".   In reality, VGW has created, and operates popular virtual
internet gambling casinos that market online gambling casino games under the
names "Chumba Casino" (hereinafter also referred to as "Chumba"), which is
operated by VGW MALTA, "LuckyLand Slots" (hereinafter also referred to as
"LuckyLand"), which is operated by VGW LUCKYLAND, and "Global Poker",
operated by VGW GP.  Collectively, these sites are also referred to as "the games"
or "casino games" when the websites are described in general terms.

18.     In these casino games VGW offers a multitude of electronic versions of slot
machines, blackjack, poker, and at all times material to this action, roulette or a
form of a lottery wheel.  The games are available to play online at
chumbacasino.com for Chumba or VGW MALTA,  luckylandslots.com for
LuckyLand or VGW LUCKYLAND, and globalpoker.com for Global Poker or

VGW GP, which, in addition to poker, provides both games of blackjack and slot machines.

19.    VGW has represented to the citizens of Florida that VGW operates video game or arcade game websites permitting just for fun gameplay.  However, in reality VGW has intended to and actually operates websites that are internet gambling casinos where Florida citizens and other customers and consumers wager and lose real money.  In some sense VGW has attempted to camouflage key components of the operations as "sweepstakes".

20.    VGW through VGW GP also hosts online poker games and takes a percentage of the money wagered by Florida citizens playing online poker.  The percentage ranges from 2.5 percent to 15 percent in what is identified on globalpoker.com as  "the rake", for which VGW is liable in accordance with Sections 849.25 and 849.29 of the Florida Statutes.  In addition, Global Poker or VGW GP operates slot machines and blackjack games, similar to Chumba and LuckyLand.

21.    All of VGW's games are identical to gambling or games of chance that exist in legally permitted, but highly regulated brick-and-mortar gambling casinos.  The difference is that VGW's casino games are operating illegally under Florida law.

22.    In exchange for payment of "real money" or dollars from consumers or Florida citizens, VGW sells virtual currency, or "coins" that can be used to wager

on games of chance.  VGW has established a scheme to deprive consumers of their money or dollars by providing consumers the potential to win and collect real money prizes or dollars. VGW uses these coins to both give consumers a false sense of security, while hiding that VGW are engaging in real money gambling. Likewise, VGW has used this scheme to attempt to mislead regulators about the true nature of VGW's operations.  The terms "consumer", "consumers", and "customers" as used in this Complaint are intended to solely mean "Florida citizens" or "citizens of the state of Florida".

**History and Development of VGW – Brief Description of Operation**

23.     For over a decade VGW has developed and marketed online gambling in the United States.  As early as 2012, the billionaire founder/CEO of VGW HOLDINGS, Laurence Escalante, expressed his intent to create virtual gambling casinos that would offer consumers the opportunity to gamble online with "real money" outside the United States, and at that time purportedly within the United States with "virtual currency".  Laurence Escalante outlined the plan during a televised or recorded conference at the "Launch Festival, March 7 and 8, 2012, at the San Francisco Design Center."  A video presentation of this expressed intent can be found at  https://www.youtube.com/watch?v=M-ekhp92V-0&list=PPSV. From 2012 through the present VGW and Laurence Escalante have advertised that

they look to combine "virtual currency and gambling", eventually shifting into creating online gambling operations for real money in the United States.

24.    For several years VGW marketed and operated online real money gambling casinos within Florida, a large market known for having extensive restrictions regarding gambling.  In Florida, as with other states,  VGW entices visitors to play on the sites by offering a "free-to-play" option where players receive a bundle of free "coins" to play VGW's casino games, and where every game is a game of chance.  After the customers inevitably lose these coins, they are prompted to purchase more if they wish to continue playing.

25.    Freshly topped off with additional coins, consumers wager to win more coins.  The coins won by consumers playing VGW's games of chance are identical to the coins that VGW sells.  Thus, by wagering coins that were purchased, consumers have the chance to win additional coins that they would otherwise have to purchase.

26.    None of these coins titled "Gold Coins" may be redeemed for money. However, through this process, the consumer expends money to play casino games for the experience of the game and the experience of games of chance or gambling. The exclusive purpose of selling consumers the "Gold Coins" is to cause consumers to play VGW's games of chance.  It is very difficult for consumers to

play VGW's games without purchasing "Gold Coins" and impossible to play any of the games without maintaining a balance of coins that the consumer can wager.

27.     When consumers purchase "Gold Coins", VGW provides an additional allotment of special coins ("Sweeps Coins") that consumers can use to play the games and win or lose real money.

28.     These gambling operations have been wildly profitable for VGW. In their fiscal year ended June 30, 2023, VGW won and collected roughly Nine Hundred and Eighty Million Dollars ($980,000,000) from American consumers – which they reported on their audited financial statements in Australia.

29.     VGW uses the same pretext that brick-and-mortar internet sweepstakes facilities, known as internet cafés previously used across the state of Florida, until they were shut down through criminal prosecution and through legislation passed by the Florida Legislature in 2013.  The only material difference is that VGW now operates exclusively on the internet rather than in setting up cafes in physical locations.

31.     VGW has falsely advertised through its websites that its casino websites are legal operations because each site is part of a "social casino" that is offering "sweepstakes promotions", and that the coins that consumers purchase (called "Gold Coins") have no redeemable monetary value.  However, when purchasing the "Gold Coins", the consumer also receives what VGW calls or categorizes as

"Sweeps Coins".  These "Sweeps Coins" have redeemable monetary value and may be redeemed for dollars that can be deposited to the wagerer's bank account or digital wallet or to gift cards, at an exchange rate of 1:1 (one "Sweeps Coin" being equivalent to $1).

32.     Consumers may use the "Sweeps Coins" to wager on games of chance such as online slot machines, online blackjack, online poker and more in the hopes of winning more "Sweeps Coins" and ultimately turning in the "Sweeps Coins" for money.

32.     The sale of "Gold Coins" is nothing more than a pretext for the purchasing of, and wagering with, "Sweeps Coins" in what amounts to a real money online gambling casino – the exact type of operation that Florida law prohibits.

33.     VGW admitted under oath on numerous occasions that VGW captures detailed consumer data at the point of sale of the coins.  Furthermore, VGW verifies the identity of every person who creates an account, and VGW maintains extensive, detailed records of who has purchased coins, lost money, won money, redeemed and collected money.  Therefore, VGW knows exactly how much each Florida citizen has lost to VGW and can easily provide this information to the Court.


## FACTUAL ALLEGATIONS

**Sweepstakes Facilities / Gambling And The Transition to Online Gambling**

34.     In the early 2010s, across the United States, the spread of "Internet Sweepstakes Cafés" or "Internet Sweepstakes Facilities" became an epidemic. Florida was no exception to this.

35.     These illegal gambling operations would claim to sell internet time or phone cards to consumers and, as part of an alleged "sweepstakes promotion", consumers would receive "sweepstakes points" or "sweepstakes credits". These "points" or "credits" – which were redeemable for cash – would be used to wager and gamble on casino style games of chance that were played on computer terminals at the internet cafés.

36.     This ploy to circumvent gambling laws was highly lucrative for a time, despite the scheme clearly being gambling under Florida law. Eventually, criminal charges were brought against operators of these facilities. The operators argued that their operations were not gambling as consumers were not actually purchasing the "points" but instead receiving them for "free". *See, House of Representatives Final Bill Analysis, HB 155, Mathis v. Eslinger*, 2022 U.S. App. LEXIS 31251, 2022 WL 16849124 (11th Cir. 2022) (describing how Allied Veterans of the World and Affiliates ("AVW") gambling operations functioned), *see also, Mathis v. State*, 208 So. 3d 158 (Fla. 5th DCA 2016); *Phone-Sweeps v. Seminole County*, No. 6:11-cv-155-Orl-28GJK, 2013 U.S. Dist. LEXIS 207697 (M.D. Fla. Aug. 6, 2013)

(describing Phone-Sweeps software for internet café sweepstakes and prizes or gambling)

37.     After successful prosecutions of the internet cafés, to further put the nail in the coffin of these operations, the Florida State Legislature enacted Florida House Bill 155 which was passed and signed into law in 2013 and established that these so called "sweepstakes promotions", like those now promoted and operated by VGW, are in fact schemes of chance and gambling under Florida law.

38.     However, innovation is a constant where there are financial incentives, and criminal activities are not exempt from that fact.  These gambling internet café operations moved out of the strip malls and bars that they used to inhabit and now they call the internet home.

39.     VGW pioneered this migration of "sweepstakes casinos" to the world wide web and VGW has knowingly, intentionally, willfully, and illegally won *billions of dollars* from its gambling operations, while also lying to the public and proclaiming that VGW's operations are legal.

**VGW's Illegal Gambling Scheme**

40.     VGW controls and operates at least three popular casino Internet sites. These are Chumba Casino, operated through VGW MALTA, LuckyLand Slots, operated through VGW LUCKYLAND, and Global Poker, operated through VGW GP.  All three operate in much the same way, and therefore the causes of action

alleged in this Complaint are identical for VGW, including that VGW HOLDINGS operates and controls VGW MALTA, VGW LUCKYLAND and VGW GP, which act as agents for VGW HOLDINGS.

41.     VGW offers games of chance – including but not limited to slot machines, blackjack, and roulette.  Global Poker also offers online poker games, exactly like poker games in the physical world, but online.

42.     VGW makes money by selling "coins" to Florida citizens.  The coins are then gambled like chips in a physical casino where VGW takes the other side of the consumers' / bettors' wagers (betting against the consumer) in all of VGW's games.  The one exception is for the poker games that exist on VGW GP where VGW makes money by taking a "rake" (a percentage of every pot or wagers made in a hand of poker) or by charging a fee for organizing poker tournaments, which is defined as "bookmaking" under Section 849.25 of the Florida statutes.

43.     All of VGW's games are games of chance where algorithms assign results after the wager is placed.  Once a user presses a button on the consumer's computer, phone, tablet or electronic device of any kind, VGW's computer servers display entertaining game images to the consumer / bettor and the result of the game is decided by code on VGW's computer servers.  VGW's games possess a user interface identical to games of chance that may be found in brick-and-mortar

casinos.  The images below exemplify the types of games, that are found on

VGW's websites.









44.    When playing VGW's games of chance, consumers put at risk, or wager,

things of value in the hopes of winning more of the same thing of value.  VGW

operates an obvious gambling scheme.

45.     VGW publishes the intellectually dishonest claim that VGW does not operate gambling platforms.  VGW claims to operate a "social casino" which does not allow real money gambling; VGW claims that in conjunction with the "social casino" VGW merely offers "sweepstakes promotions" that provide "cash prizes". This is the same attempted scheme that the previously described brick-and-mortar "Sweepstakes Cafés" or "internet cafés" unsuccessfully argued to concerning their legality.

46.     VGW's illegal gambling scheme operates through a two-tiered system of "coins" that Florida citizens purchase.  To play on VGW's gambling websites, consumers may choose between wagering "Gold Coins" (hereafter also referred to as "GC") and "Sweeps Coins" (hereafter also referred to as "SC") (together, the "coins").  GC may be used only to play the games on the sites and cannot be redeemed for cash or money.  SC, however, may be redeemed for cash that VGW through FIS delivers to the consumer's bank account or digital wallet, or as gift cards at an exchange rate of 1:1 – 1 SC is equal to $1.

47.     When consumers visit VGW's websites for the first time, the consumers are awarded a nominal allocation of "free coins".  Consumers also receive coins as a free daily bonus once a day when logging in to their accounts, much like being "comped" at a physical casino.  An example of the popup message for this "Daily Bonus" (for Chumba) is below:



48.     Consumers can play games on the platform in what VGW refers to as "standard mode", or "standard play" using GC.  Likewise, consumers can play in what VGW refers to as "promotional mode" or "promotional play" using SC. Consumers may switch between these two modes easily and as frequently as they

would like. An example of the toggle button permitting this switching is shown below:



49.     It is important to note that it is only possible to play VGW's games through the wagering of either GC or SC.   Consumers must wager coins in order to play the games of chance.  It is impossible for a consumer to play VGW's games when the consumer does not have a balance of coins in an account with VGW.

50.     Despite the existence of GC and being able to play in "standard mode", playing in "promotional mode" with SC is the be all end all of VGW's platforms. For example, message boards such as Reddit are populated with players discussing wins and losses of SC.  YouTube "influencers", who are sponsored by VGW, have recorded themselves playing with SC for years.   LuckyLand's own website shows players' testimonials describing the large cash prizes players throughout the United States have won through the wagering of SC.  A sample of such testimonials is shown below:



Chumba advertises how it has created "50 Chumba Millionaires", and asks, "Will You Be Next?".



Likewise, internet video advertisements such as these below in October and November 2023 display gigantic sized checks to emphasize how consumers can win big money on VGW's sites.





51.    VGW advertises and promotes the websites as gambling operations since the sites call themselves "Chumba **Casino**", "LuckyLand **Slots**" and "Global **Poker**". Furthermore, shown below is LuckyLand's own logo where it prominently displays stacks of cash with "SC" written on them, emphasizing the importance of the SC. And VGW has now boldly ventured into marketing and selling lottery scratch off card games, in direct competition with state controlled lotteries, as shown below.









52.    When consumers play VGW's games they wager coins on games of chance

with the hopes of winning more of the coins that they wagered.  Routinely, after

they begin playing, consumers quickly lose their allotments of coins. This is

because a consumer is playing games of chance that are skewed heavily in the

favor of VGW casino operations – just like in brick-and-mortar casinos.

Furthermore, as with brick-and-mortar casinos, the longer a consumer plays VGW's games the more likely VGW will ultimately win, and the consumer will exhaust the coins. To make matters even worse, however, unlike brick-and-mortar casinos, VGW is not subject to a single regulation or governmental oversight to ensure it is acting fairly and not cheating or skewing the odds in its favor.

53.     When playing with SC – which is the equivalent of playing with real dollars since SC may be redeemed for real cash and cash equivalents – after the consumers lose all the SC, VGW immediately informs the consumers that they have insufficient coins to place a wager.  On Chumba users are presented with the below message instructing them to purchase more GC – as a mechanism to receive SC.



On LuckyLand the users are immediately redirected to the store, as shown below:



 On Global Poker the users receive the below message telling them to go purchase coins.



The message is clear.  To keep wagering SC, spending money on GC is the way to go about it.  What the consumer really values and in practice the consumer is actually purchasing, however, is SC.

54.     When playing on Chumba, upon clicking "Buy Gold Coins", consumers are redirected to the "Store" where they can purchase more GC. The majority of purchase packages also offer SC as part of the purchase of GC. The SC amounts

are prominently highlighted by VGW in green, likely intended to symbolize the color of money.  Shown below is an image of the Chumba Store.



55.     In LuckyLand, after exhausting their SC balances, users or consumers are directed to the "LuckyLand Store" to purchase more GC.  Every purchase package provides SC which are likewise prominently displayed in green.  An image of that store is below:



56.     On Global Poker, when consumers no longer have any SC available to wager they are directed to the store to purchase more coins as well.  It is clear that when purchasing GC consumers receive SC.  An image from Global Poker is shown below:



57.     In the VGW sites and stores consumers are offered multiple options to purchase coins and purchase packages can vary. However, for Chumba, prices generally range from $1.00 for 200,000 GC to $1,000 packages for 400,000,000 GC; for Global Poker $2 can be used to purchase 10,000 GC up to $500 for 2,600,000 GC; for LuckyLand purchase packages range from $9.99 for 40,000 GC to $299.99 for 2,100,000 GC.  So, there is enormous variance between sites in how much a $1.00 payment will net in terms of GC.

58.     However, the SC delivered in these packages is much more consistent as it tends to be approximately a 1:1 ratio to the "real money" purchase price the consumer pays – with some extra SC given when the consumer spends greater quantities of dollars.  For example, on Chumba and LuckyLand a $300 purchase package would produce 315 SC; on Global Poker a $500 package would produce 515 SC.  This small extra amount of SC compared to the dollars spent by consumers is similar to brick-and-mortar casinos giving "comps" of meals, hotel stays or free wagers to consumers who spend more money in the brick-and-mortar casinos.  VGW also often throws in, or comps, a bonus of extra SC to the consumers so they will play more.

59.     Through the payment partner, FIS, VGW's websites accept payment of dollars in exchange for coins through many forms, including, but not limited to,

debit cards, credit cards, bank transfers, gift cards and digital wallet transactions.

An example of the payment options is shown below.



60.     All of VGW's games are known to be games of chance or gambling that can

be found in brick-and-mortar casinos.  All of VGW's games of chance, with the

exception of poker, require no skill, nor do they test skill in any way.  VGW's

games accept wagers of things of value – in the form of digital coins – which have

monetary value and may be redeemed for cash and cash equivalents.  The bettors

or consumers wager these coins on VGW's games in the hope of gain in the form

of earning more coins.   Winning GC allows the consumer to play more games

without having to purchase additional GC.  Winning SC is equivalent to gaining

more money due to the redeemability of the SC for cash.  All games on VGW fit

the Florida statutory definition gambling, gambling devices and slot machines.  In

fact, since 2013, and amendments to Section 849.16 of the Florida Statutes, the

legal definition of slot machine has been expanded to include "a system or network

of devices" that allow users to play games of chance to "secure additional chances or rights to use such machine, apparatus, or device, even though the device or system may be available for free play."  Florida has thus prohibited every aspect of VGW's operations and VGW's claims that their "free" operations are legal is clearly false.

61.    VGW frequently offers free coins or extra SC to users to entice them to play the casino games.  And, as has been scientifically recognized, the casino games can become addicting since casino games have been scientifically proven to stimulate dopamine boosts in human beings. Consumers inevitably quickly lose these free coins. VGW then stimulates consumers to purchase more coins necessary to play by redirecting the consumers to the store after losing the free coins so they can continue wagering, as described above.

62.    Playing games of chance, including wagering with SC, is clearly real money gambling as SC can be redeemed for cash or real money with an exchange rate of one SC equal to one dollar.

This gambling of dollar equivalents is how VGW actually makes its profits.

63.    VGW may claim that "…Sweeps coins cannot be purchased and [have] no inherent value. …" *https://www.chumbacasino.com/about-us*.  However, this is extremely disingenuous as the GC purchase packages prominently display the amount of SC the consumer receives, VGW's own sites advertise the SC and that

SC can be redeemed for money that VGW through FIS sends directly to consumers' bank accounts, where 1 SC is equal to 1 Dollar.  It is no mistake that at the time of purchase of GC, the amount of SC available to the consumer is nearly 1 to 1 for the dollars that the consumer spends; clearly the consumer would not be spending, for example, $300 to receive 100 SC in the same way that no one at a brick-and-mortar casino would pay $300 to receive $100 in casino chips.

64.    When a consumer wagers SC, and has a sufficient balance, the redemption button is prominently displayed on VGW's websites clearly identifying that the consumer can redeem the SC for cash or cash equivalent gift cards. Below are images showing the redemption process on Chumba Casino (which exemplifies the process for LuckyLand and Global Poker as well):







65.    VGW further incentivizes consumers to continue playing the games, and eventually lose their SC balance by establishing restrictions on how to redeem and collect SC.  On Chumba and Global Poker the minimum permitted redemption

amount is 100 SC to be redeemed for $100; on LuckyLand, the minimum is 50 SC to be redeemed for $50.  Therefore, any balance below those thresholds remains stuck on the site and cannot be withdrawn or deposited, a further encouragement for consumers to continue playing the casino games. VGW also permits only one redemption per time, and VGW has implemented delays to "approve" and "process" redemptions.  These restrictions are designed to further entice consumers to cancel their redemption requests and continue playing the casino games.  But these techniques or restrictions are not permitted at brick-and-mortar casinos that are highly regulated.  In fact, VGW does not follow a single law or legal regulation that legally permitted and regulated brick-and-mortar casinos must follow.

66.    As a part of VGW's gambling scheme and attempt to maintain a façade of legality, consumers can accumulate SC in multiple ways:

    a.  By receiving SC upon the purchase of specifically marked packages of Gold Coins;

    b.  By entering "Sweeps Coins no-cost give away contests" on the games' Facebook pages;

    c.  By sending a request by mail to VGW MALTA, VGW LUCKYLAND, and VGW GP, respectively; and,

    d.  As a "Daily Bonus" given when logging on to the players account (once per day).  *https://www.chumbacasino.com/sweeps-rules*.

Consumers, however, are highly incentivized toward option "a." This is because option "a" is instantaneous and allows large amounts to be purchased. Whereas the other options vary from very difficult and slow (taking months to write, send letters and receive credits for sending a mail request) to very small (only receiving 1 SC per day from the "Daily Bonus"). The sale of GC serves as a pretext to sell SC and facilitate real money gambling.

67.   Consumers can play the same casino games using SC that they would play with GC. The significant difference is that when a consumer plays the casino games with GC, a consumer or player can only win or lose GC, whose value exists solely in allowing the consumers to play the games and continue entertainment without needing to disburse more cash. Whereas, as previously mentioned, SC are available to be redeemed for dollars sent to consumers' bank accounts, digital wallets, gift cards etc.

68.   VGW has thus devised a scheme whereby players can utilize SC in a manner indistinguishable from a brick-and-mortar casino, but where VGW has virtually complete control and VGW can mislead Florida citizens into mistakenly believing that they are playing games that are permitted by Florida law and regulated in the same manner as legalized casinos in the state of Florida. In fact, VGW's websites knowingly, willfully, and prominently advertise the falsehood that the sites are

operating legally in the United States.  This false claim is included in VGW's

websites' Terms and Conditions / Terms of Use for each website.

69.     In most instances, when purchasing a GC package, the consumer receives an

amount of SC that is slightly greater than the dollar amount the consumer deposits.

The larger the purchase package the more SC the consumer receives. For example,

a purchase package that costs $5.00 for GC will come with 5.05 SC, a difference of

1%. But a package that costs $300 for GC comes with 315 SC, a difference of 5%.

VGW rewards the players who purchase more expensive packages with extra SC,

thus stimulating more purchases and more play. This is to incentivize players to

purchase more, play more and inevitably lose more money.

70.     Consumers are required to wager their SC before they are permitted to

redeem SC.  VGW may claim that this is how VGW remains "legal".   VGW

claims the SC are unable to be redeemed before wagering, and therefore have no

value.  Only after wagering SC and, in the unlikely scenario that consumers win

the wager, do the SC that are won have monetary value and can be redeemed. In

VGW's own words in their "Sweeps Rules", the SC "…that has been won through

game play can then be redeemed for a prize with a value equal to US $1.00 per

SC."  This is VGW's way to force consumers to wager and risk losing money.  In

other words, players, consumers, or customers are required to play the games of

chance or gamble on VGW's site with SC with a 1-time playthrough in order to

later redeem the SC and collect a prize of cash or cash equivalents.  Defendants erroneously attempt to justify this by claiming that because SC are unable to be redeemed before wagering that they have no value.  VGW claims that this somehow converts their obvious illegal gambling operation into a "sweepstakes" that can operate legally. https://www.chumbacasino.com/sweeps-rules.

71.     Winning any actual money through accumulating Sweeps Coins (SC) is often a pipe dream, however, because these games of chance are not subject to regulation in the United States (VGW MALTA and VGW GP claim to be regulated in the Island of Malta), and the games certainly heavily favor VGW.  In fact, VGW's Terms and Conditions / Terms of Service state that it is the consumers' responsibility to check on the odds of each game.  However, in many cases, these odds are nowhere to be found.  Furthermore, VGW also states that VGW may change the odds at VGW's discretion whenever it chooses.  VGW's games are therefore a black box that are not regulated or scrutinized in Florida or anywhere in the United States for that matter.  In fact, this is by design because Florida regulations, if they were followed, would not allow VGW to operate in the state.

72.     Regardless of what mode a player is using in VGW's websites, once the player or consumer spins the slot machine by pressing a button none of VGW's slot machine games allow (nor call for) any additional user action.  Instead, the consumer's device communicates and sends information to VGW's servers.

VGW's servers then execute the games' algorithms that determine the spin's outcome.

73.    None of the outcomes in VGW's slot machine games depend on any amount of skill to determine their outcomes – as all outcomes are based entirely on chance.

74.    In VGW's blackjack games, the player makes choices and wagers coins in a manner that is identical, or nearly identical, to placing bets at a casino blackjack table – although it is unknown if the player's choices or decisions affect the outcome as well as the chances of winning.   This is partly due to the lack of transparency regarding the algorithms employed by VGW.

75.    In VGW's poker games, the player makes choices and wagers coins in a manner identical or nearly identical to playing poker in a casino or a card room, although there is no certainty of legitimacy regarding the odds because of the lack of transparency regarding the algorithms employed by VGW.

76.    VGW, however, maintains win and loss records and account balances for each consumer. Indeed, once VGW's algorithms determine the outcome of a wager, VGW displays the outcome to the consumer, VGW then adjusts that consumers account balance.  VGW keeps records of each wager, outcome, win, and the loss for every player of the games.

77.    VGW maintains extremely detailed records of the identity of each individual user of their site.  To create an account users must verify their identity and address,

and provide a copy of photo ID, such as a driver's license. VGW also maintains

detailed records of every individual purchase that users make and every

redemption that users make. VGW knows exactly how much each individual user

has won and lost on their site and the outcome of every single wager every bettor

or consumer has made.

78.     Additional evidence of the fact that VGW operates internet gambling sites is

the fact that consumers can only obtain SC through purchasing GC or using the

other methods described in paragraph 66, above. For example, in Chumba when a

consumer purchases 150,000,000 GC at a cost of $300.00 "real money", the

consumer receives 315 SC. However, if the consumer plays the casino game,

wagers all 150,000,000 GC and wins an additional 150,000,000 GC, the consumer

receives no additional SC. So, VGW restricts consumers by requiring them to

purchase more and more GC, at the same time enticing the consumers with the

hope that by purchasing huge quantities of GC, the consumer can increase his or

her supply of SC. This often results in the consumer playing the games with just

SC because by wagering only SC, the consumer can win "real money" that the

consumer can keep or use to purchase more GC and SC.

79.     VGW may claim that the award of SC to consumers is like an award of

legitimate and legal sweepstakes prizes. In reality, however, consumers must

either purchase SC or otherwise provide some monetary consideration to obtain

SC, whether in the form of direct purchases of SC through the purchase of GC or the costs of preparing and mailing in requests to VGW.  Any other methods of obtaining SC result in the award of only nominal amounts of SC.  In other words, as in the case of brick-and-mortar casinos, consumers are only able to obtain SC in much the same manner as a customer purchasing chips at a brick-and-mortar casino.  Likewise, except for direct purchases of SC, VGW can and does arbitrarily limit the bonuses of SC upon purchases of GC and VGW often arbitrarily rejects submissions of mailed requests for SC, contrary to the normal, legitimate, sweepstakes process.

**Illegal Scheme of Chance Causing Immense Losses to Citizens of Florida**

80.  In 2013, when the Florida legislature enacted HB 155, the bill was designed to prohibit operations exactly like VGW's.  The law expanded the definition of a "game promotion" – and restricted "sweepstakes" - to specify that "game promotions" or "sweeptstakes" must be "in connection with and incidental to the sale of consumer products or services".   The reality is that VGW's bonuses of SC are what the consumers and Florida citizens purchase, and the GC is incidental. This is VGW's attempt to thwart the laws of the state of Florida that prohibit illegal gambling operations.

81.    VGW, however, proactively defrauds Florida citizens because VGW advertises that the operations are legitimate and legal when, in reality, VGW

knowingly and willfully operates what constitutes an illegal gambling enterprise. The Terms of Service across VGW's various sites further defraud Florida citizens by stating the citizens that they will not be allowed to play on VGW's platforms in states where they are prohibited.

82.    VGW's audited financials show VGW spends hundreds of millions of dollars advertising VGW's platforms and, in such advertisements, erroneously advertise their own legality and thus VGW has defrauded and manipulated Florida citizens into engaging in illegal gambling.

83.    VGW uses targeted advertising across social networks, advertises on search engines such as Google, sponsors YouTube gambling channels and more, to entice Florida citizens to gamble on VGW's platforms.  Furthermore, VGW associates with famous athletes and celebrities (shown below) to create a veneer of legitimacy – exactly like infamous illegal gambling sites Full Tilt Poker and PokerStars used to do before those sites were shut down in the United States.



84.     Thus, VGW's illegal gambling operation has been extremely lucrative as evidenced by a portion of VGW's audited financial statements (where all numbers are in thousands of Australian Dollars) for the fiscal year entered June 30, 2023, shown below.  For example, in 2023, VGW obtained revenue of Four Billion Eight Hundred Thirty-Five Million One Hundred Forty-Eight Thousand  Australian dollars. ($4,835,148,000), or approximately Three Billion One Hundred Six Million  American dollars ($3,106,000,000).

**VGW HOLDINGS LIMITED AND CONTROLLED ENTITIES**
**Consolidated Statement of Profit or Loss and Other Comprehensive**
**Income for the year ended 30 June 2023**

| From continuing operations | Note | 2023 $'000 | 2022 $'000 |
|---|---|---|---|
| Revenue from contracts with customers | 4 | 4,835,148 | 3,457,148 |
| Sweepstakes prizes | | (3,355,545) | (2,288,975) |
| Merchant and affiliate fee | | (248,902) | (161,462) |
| Finance income | 5 | 5,753 | 89 |
| Finance costs | 5 | (10,849) | (1,479) |
| Foreign currency (loss)/gain | 5 | (22,654) | 10,464 |
| Other income | 5 | 217 | 9 |
| Marketing and advertising fees | 5 | (359,987) | (235,259) |
| Legal and professional fees | | (65,384) | (33,102) |
| Employee benefits expense | 6 | (116,862) | (80,408) |
| Share-based payments expense | | (24,397) | (8,171) |
| Depreciation and amortisation expense | | (6,927) | (5,977) |
| Technology and other communication expense | | (47,984) | (31,105) |
| Property and occupancy expense | | (2,281) | (1,589) |
| Sponsorship, general and administration expense | | (33,198) | (16,079) |
| | | **(4,289,000)** | **(2,853,044)** |
| **Profit before income tax** | | **546,148** | **604,104** |

85.     It is thus clear that VGW through its websites, chumbacasino.com,

globalpoker.com and luckylandslots.com operate illegal gambling operations in the

state of Florida.  By operating through the internet VGW pays no taxes to the state

of Florida, employs no Florida residents, and has not obtained permits from the

state of Florida.

86.     By contrast, to obtain a permit to operate casinos, the Seminole Tribe of

Florida was required to enter into a detailed gambling compact with the state of

Florida, where in 2021 the Seminole Tribe agreed to many legal conditions,

including paying a revenue share of Two Billion Five Hundred Million Dollars ($2,500,000,000) or greater to the state, Six Hundred Thousand Dollars ($600,000) in annual compliance fees, and Two Hundred Fifty Thousand Dollars annual donation to the Florida Council on Compulsive Gambling.  Further, the legal Seminole Tribe casino compact provides for annual state compliance audits of the Seminole Tribe's slot machines.  VGW's operations attempt to avoid all of these type regulations, and yet VGW still widely publicizes that it is an online gambling casino, as evidenced by the results from this sample Google search.



can you gamble online in florida

For free | Hard Rock | Images | News | Videos

**Sponsored**


Chumba Casino
App Store

## Install now | Chumba Casino - Win Live Games - Chumba Casino | Online...

4.9 ★★★★★ (45)

Chumba Casino | Best bonuses up to 1000


↓ Install



87.     VGW's audited financial statements, and investor reports, clearly show that VGW has earned billions of dollars in gambling wins from United States consumers. Tens of millions, if not more, of these losses come directly from citizens of the state of Florida. In fact, over the past four years VGW's revenue has increased at an average annual growth rate of 100%.  Over the past four years VGW's advertising expenditures increased at an average annual growth rate of 74%.  Over the past four years losses sustained by consumers playing on VGW's illegal gambling internet websites have increased at an average annual growth rate of 76%.  Furthermore, the fact that VGW has continued to operate freely and achieve such large economic profits has spurned the creation of many copycat websites which operate illegally, deprive consumers of their money, deprive citizens of the state of employment opportunities and deprive the government of tax revenue.

88.     VGW maintains detailed records of every individual bettor's identity, individualized data about each bettor's purchase history, their redemption history, and the bet-by-bet history of the results of every single bet that was made. Therefore, VGW has all the records necessary to calculate and reveal the losses sustained by citizens of the state of Florida.

**FIS – Vendor To VGW – Section 849.29 of Florida Statutes**

89.     At all times material to this Complaint, Defendant FIS has been a vendor to VGW and actively participated in the day-to-day gambling transactions of VGW, and as provided for in Section 849.29 of the Florida Statutes, FIS is jointly and severally liable with VGW for the losses and damages that Plaintiff and all Florida citizens similarly situated are entitled to recover because of the acts of VGW and FIS.

90.     FIS is a Florida corporation that has registered and maintains its headquarters in Duval County, Florida since 2019.

## CLASS REPRESENTATION ALLEGATIONS

89.     Plaintiff seeks to sue VGW and FIS and Plaintiff seeks to represent a class defined as and limited to all citizens of the state of Florida who suffered losses of money on Chumba Casino, Global Poker, or LuckyLand Slots during the applicable limitations period, and whose losses were processed by and transmitted to VGW by FIS (hereafter the citizens of the state of Florida are also referred to as the "Class").

90.     Specifically excluded from the Class are VGW,  FIS, their officers, directors, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by VGW, and the heirs, successors, assigns, or other persons or entities related to or affiliated with

VGW and or VGW's officers and or directors, the judge assigned to this action, and any member of the judge's immediate family.

91.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

92.    **Numerosity**:  On information and belief numerous Florida citizens fall into the definition of the Class. Members of the class can be identified through VGW's and FIS' records, discovery and other third-party sources.

93.    **Commonality and Predominance**:  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

(a)   Whether Plaintiff and Class Members play on all of VGW's virtual casino games constitute gambling under Florida law;

(b)   Whether Plaintiff and the Class lost money gambling to VGW as defined by Chapter 849 of the Florida Statutes;

(c)    Whether FIS, through its subsidiary and agent WORLDPAY, LLC, and WORLDPAY, INC.  processed payments and losses of Florida citizens on behalf of VGW and transmitted these to VGW; and,

(c)   Whether Plaintiff and the Class are entitled to recover from

VGW and FIS their monies spent on VGW's casino games pursuant to

Sections 849.26 – 849.34 of the Florida Statutes, Section 501.211 and

/ or Section 772.104 of the Florida Statutes, or Civil Conspiracy.

94.   **Typicality**:  Plaintiff's claims are typical of the claims of the other members

of the Class and that among the other things all Class members were similarly

situated and were comparably damaged through VGW's and FIS' wrongful

conduct as set forth herein.  The claims of all Class members are similar in that

they all lost money playing the games owned by VGW.  Further there are no

defenses available to VGW that are unique to Plaintiff.

95.   **Adequacy of Representation**:  Plaintiff will fairly and adequately protect

the interests of the Class, which is estimated to consist of numerous Florida

citizens.  Plaintiff has retained counsel that has more than 40 years litigation

experience in the state of Florida, and Plaintiff intends to vigorously prosecute the

action on behalf of the Class.  Furthermore, Plaintiff has no interests that are

antagonistic to those of the Class.

96.   **Superiority**:  A class action is superior to all other available means for the

fair and efficient adjudication of this controversy.  The damages or other financial

detriments suffered by individual Class members are relatively small compared to

the burden and expense of individual litigation on their claims against VGW and

FIS.  It would thus be virtually impossible for the Class to obtain effective redress for the wrongs committed against the members on an individual basis. Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by the action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF CHAPTER 849 OF THE FLORIDA STATUTES

## SECTIONS 849.26 – 849.34 OF THE FLORIDA STATUTES

97.    Plaintiff, on behalf of himself and the Class, incorporates the foregoing allegations in paragraphs 1-96 as if fully set forth herein and sues VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED (previously and herein referred to collectively as "VGW") and FIDELITY NATIONAL INFORMATION

SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY, LLC and WORLDPAY, INC. (previously and herein referred to collectively as "FIS") collectively and each independently for disgorgement of losses pursuant to Chapter 849 of the Florida Statutes.

98.    Chapter 849 of the Florida Statutes prohibits the creation and operation of forums, including internet websites, that participate in gambling transactions and that have not been legally established or sanctioned by the State of Florida. Chapter 849 further provides that operations of such gambling forums or websites constitute misdemeanors of the second degree under Sections 849.01 and 849.08 of the Florida Statutes.

99.    Further, Section 849.26 of the Florida Statutes specifically declares that all agreements and contracts for gambling transactions are void and of no effect.

100.   Therefore, all of VGW's gambling operations, agreements, and the funds it has received from Plaintiff and the Class are void and subject to disgorgement, refund or return to Plaintiff and the Class in order to reimburse Plaintiff and the Class for their losses.

101.   Sections 849.26 through 849.34 of the Florida Statutes recognize and authorize the Plaintiff and the Class to proceed with litigation against VGW to recover all losses that Plaintiff and the Class may have incurred from utilizing the

VGW gaming websites and from the gambling transactions that took place on those websites.

102.   Further, Plaintiff and the Class "…shall be entitled to writs of attachment and garnishment for the sums of money, exclusive of attorney's fees, sued for the use and benefit of persons other than the state, in the same manner and to the same extent as in an action on contract. …" , as provided in Section 849.30 of the Florida Statutes.

103.   Therefore, Plaintiff and the Class are recognized and entitled by Florida law to the disgorgement and return of all gambling or gaming losses suffered by Plaintiff and the Class because any such gambling agreements with VGW are void, as stated in Section 849.26 of the Florida Statutes.

104.   Pursuant to Section 849.27 of the Florida Statutes, Plaintiff is required to notify the state attorney of this circuit in order to afford the state attorney the opportunity to monitor and protect the interests of the state of Florida and to afford the state attorney the opportunity to prosecute an action on behalf of the state.

105.   Section 849.33 of the Florida Statutes authorizes the Plaintiff to obtain a judgment on behalf of Plaintiff and the Class separate from the interest of the state and state attorney.

106.   Section 849.34 of the Florida Statutes recognizes the right of Plaintiff and the Class to recover property and money after entry of a judgment through the use of writs of assistance, possession or execution.

107.   Likewise, Sections 849.21 of the Florida Statutes authorizes Plaintiff to seek the entry of an injunction against VGW.

108.   VGW's casino games constitute an internet gambling operation because the players, and in particular Plaintiff and the Class members have tendered money by purchase of GC and SC, and then wager the GC or SC on gambling games, games of chance and games of skill.  By an element of chance (e.g., spinning a virtual slot machine, choosing numbers on a roulette table, playing blackjack, or playing poker) VGW creates a right to credits and or other things of value such as SC that can be redeemed for money, or additional GC is provided to allow for further play of VGW's games.

109.   Plaintiff and the Class suffered losses or damages from gambling operations conducted by VGW when Plaintiff and the Class purchased coins or expended money to obtain coins (GC and SC) to wager at VGW's games.  Plaintiff and each member of the Class staked money in the form of coins purchased with money or acquired by expenditures of money, in order to play VGW's games of chance (VGW's slot machines, roulette, blackjack, and poker within VGW's websites) for

the chance of winning additional things of value (e.g., coins that grant additional free plays (GC), or coins that can be redeemed for prizes or cash (SC))

110.   The "Gold Coins" (GC) Plaintiff and the Class have had the chance of winning in VGW's virtual casino games are things of value under Florida law because the GC are credits that allow for the extension of entertainment and the privilege of continuing to play the games without additional charge.

111.   The "Sweeps Coins" (SC) Plaintiff and the Class had the chance of winning in VGW's virtual casino games are things of value under Florida law because they can be redeemed for cash and cash equivalents.

112.    As a direct and proximate result from VGW's operations of their games and virtual casino, Plaintiff and each member of the Class have lost money wagering at VGW's games of chance, games of skill, or gambling games.

113.   Because the gambling transactions between Plaintiff, the Class members and VGW are void and of no effect, the moneys gambled and lost to VGW should be disgorged and returned to Plaintiff and the Class.

114.   Pursuant to Section 849.29 of the Florida Statutes, FIS is jointly and severally liable for the actions of VGW and thereby jointly and severally liable to Plaintiff and the Class to disgorge the money lost by Plaintiff and the Class to VGW.

115.   FIS has admitted and advertised to the public that it is a payment processing partner for VGW and that it has been actively working in coordination with VGW to collect and distribute money to VGW from Florida citizens who have gambled on VGW's internet casino websites, including Plaintiff and the Class.  In addition, FIS distributed gambling winnings to Florida citizens on behalf of VGW.

116.   At all times material to this Complaint, FIS, the payment processing partner or vendor for VGW, promoted, set up and participated in conducting the gambling transactions of Florida citizens with VGW, including those of Plaintiff and the Class.

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests an order or judgment:

( 1 ) requiring VGW to cease operations of their gambling devices and operations; and

( 2 ) disgorgement or return from VGW and FIS to Plaintiff and the Class all monies lost by Plaintiff and the Class to VGW, together with interest, expenses, costs, and reasonable attorney's fees to the extent allowable by law, and other just and appropriate relief including injunctive relief.

## COUNT II

## VIOLATIONS OF SECTION 849.094 OF THE FLORIDA STATUTES

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

## (SECTIONS 501.201 – 501.213 OF THE FLORIDA STATUTES)

117.   Alternatively, Plaintiff, on behalf of himself and the Class, incorporates the foregoing allegations in paragraphs 1-96 as if fully set forth herein and sues VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED (previously and herein referred to collectively as "VGW") and FIDELITY NATIONAL INFORMATION SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY, LLC and WORLDPAY, INC. (previously and herein referred to collectively as "FIS") collectively and each independently for violations of the Florida Deceptive and Unfair Trade Practices Act.

118.   Section 849.094 of the Florida Statutes provides that any operator of a game of chance, sweepstakes, or gift enterprise within or outside the state of Florida must comply with a variety of conditions in order to promote and operate such games of chance or sweepstakes to Florida residents.

119.   VGW operates games of chance or sweepstakes, as defined by Section 849.094 of the Florida Statutes and VGW is required to comply with the conditions mandated by Section 849.094.

120.   VGW has violated various terms and conditions of Section 849.094(2), which include, but are not limited to the following:

a.     arbitrarily removing, disqualifying, disallowing, or rejecting

entries onto VGW's websites and gaming forums;

b.     failing to award prizes offered;

c.     printing, publishing, or circulating literature or advertising

materials about      the websites or game promotions which is false,

deceptive, or misleading;          or,

d.     requiring an entry fee, payment or proof of purchase as a

condition of entering and utilizing VGW's websites and gaming

promotions and      forums.

121.   VGW has violated Section 849.094(3) and has not registered with nor filed

with the Florida Department of Agriculture and Consumer Services a copy of the

rules and regulations of the game promotions offered by VGW and has otherwise

failed to comply with the rules of the Department of Agriculture and Consumer

Services.

122.   The violations described above constitute second degree misdemeanors for

which VGW is liable, as stated in Section 849.094(9).

123.   VGW's violations of Section 849.094, including, but not limited to those

described above, are deceptive and unfair trade practices that are actionable under

the Florida Deceptive and Unfair Trade Practices Act contained at Sections

501.201 – 501.213 of the Florida Statutes.

124.   Pursuant to Section 501.211 of the Florida Statutes, a person who has suffered a loss as a result of a violation of the Florida Deceptive and Unfair Trade Practices Act may recover actual damages, plus attorney's fees and court costs, along with injunctive relief.

125.   Plaintiff and the Class have suffered damages, including the loss of money from VGW's  violations of Section 849.094 of the Florida Statutes and the Florida Deceptive and Unfair Practices Act, Sections 501.201 – 501.213 of the Florida Statutes.

126.    As a direct and proximate result of VGW's operations of their games, and failure to comply with Section 849.094, Plaintiff and each member of the Class have lost money wagering at VGW's games of chance.

127.   Pursuant to Section 849.29 of the Florida Statutes, FIS is jointly and severally liable for the actions of VGW and thereby jointly and severally liable to Plaintiff and the Class for the unfair and deceptive trade practices by VGW because Section 849.29 provides that FIS is "…jointly and severally liable for the items which are authorized by this act to be sued for and recovered, and any suit brought under the authorization of this act may be brought against all or any of such persons…".

128.   FIS has admitted and advertised to the public that it is a payment processing partner for VGW and that it has been actively working in coordination with VGW

to collect and distribute money to VGW from Florida citizens who have gambled on VGW's internet casino websites, including Plaintiff and the Class.  In addition, FIS distributed gambling winnings to Florida citizens on behalf of VGW.

129.   At all times material to this Complaint, FIS, the payment processing partner or vendor for VGW, promoted, set up and participated in conducting the gambling transactions of Florida citizens with VGW, including those of Plaintiff and the Class.  Therefore, FIS is jointly and severally liable for the acts of unfair and deceptive trade practices of VGW that Plaintiff and the Class are authorized to sue for pursuant to Section 849.094 of the Florida Statutes.

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests an order or judgment:

( 1 ) requiring VGW to cease operations of their gambling devices or websites within the State of Florida; and

( 2 ) awarding a judgment against VGW and FIS and in favor of Plaintiff and the Class for all lost monies, damages, interest, expenses and costs, and reasonable attorney's fees to the extent allowable by law, and other just and appropriate relief.

## COUNT III

## VIOLATIONS OF SECTION 772.104 OF THE FLORIDA STATUTES

## <u>CIVIL CAUSE OF ACTION – CIVIL REMEDIES FOR CRIMINAL</u>
## <u>PRACTICES ACT</u>

130.   Alternatively, Plaintiff, on behalf of himself and the Class, incorporates the foregoing allegations in paragraphs 1-96 as if fully set forth herein and sues VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED (previously and herein referred to collectively as "VGW") and FIDELITY NATIONAL INFORMATION SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY LLC, and WORLDPAY, INC. (previously and herein referred to collectively as "FIS") collectively and each independently under the Civil Remedies For Criminal Practices Act.

131.   Section 772.102(a) 31 of the Florida Statutes identifies violations of Sections 849.09, 849.14, 849.15, 849.23 or 849.25, relating to gambling as "criminal activity" for which a person who has been damaged may seek civil relief.

132.   Sections 849.14 (lottery – lottery wheels / roulette), 849.15 (slot machine or device), and 849.25 (bookmaking – acceptance and receiving of wagers) define the very actions of VGW and constitute the very violations of law and gambling that Section 772.102 of the Florida Statutes defines as "criminal activity".

133.   Section 772.103 of the Florida Statutes specifically states that it is unlawful for any person, "…Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest …in the establishment or operation of any enterprise. …".

134.   By receiving and accepting wagers through the VGW websites including operations of the digital roulette wheels, slot machines, and blackjack wagers, VGW has participated in the pattern of criminal activity defined in Section 772.102, and VGW has operated, used, and invested in their enterprises, in violation of Section 772.103 of the Florida Statutes.

135.   By operating an online poker site where VGW accepts a percentage of the wagers made in the online poker games, taking or receiving more than five wagers in a single day, engaging in a common scheme with two or more persons to take or receive wagers, and other acts, VGW has violated Section 849.25 of the Florida Statutes prohibiting "bookmaking", and is therefore liable under Section 772.104 of the Florida Statutes to Plaintiff and the Class.

136.   Section 772.102(3) and (4) of the Florida Statutes definitions of "enterprise" and "pattern of criminal activity" specifically apply and describe the actions of VGW related to the operations of their gambling or gaming systems that they have operated in Florida through their websites.

137.   Further, by its operations, VGW has caused economic damages in the form of money losses and damages to Plaintiff and the Class specifically in violation Section 772.104 of the Florida Statutes, and Plaintiff and the Class have the right to sue VGW for damages because of VGW's actions.

138.   Section 772.104(1) of the Florida Statutes provides that Plaintiff and the Class have a right to sue and recover damages from VGW in an amount of "threefold of the actual damages" that Plaintiff and the Class incurred, or a "minimum damages of $200" plus reasonable attorney's fees and court costs for the losses and economic damages that Plaintiff and the Class have sustained because of VGW's  violations of Section 772.103 of the Florida Statutes.

139.    As a direct and proximate result of VGW's operations of their games and gambling enterprises Plaintiff and each member of the Class have lost money wagering at VGW's games of chance and Plaintiff and the Class are entitled to recover threefold the amount of their actual losses or damages.

140.   Pursuant to Section 849.29 of the Florida Statutes, FIS is jointly and severally liable for the actions of VGW and thereby jointly and severally liable to Plaintiff and the Class for the unfair and deceptive trade practices by VGW because Section 849.29 provides that FIS is "…jointly and severally liable for the items which are authorized by this act to be sued for and recovered, and any suit

brought under the authorization of this act may be brought against all or any of such persons…".

141.   FIS has admitted and advertised to the public that it is a payment processing partner for VGW and that it has been actively working in coordination with VGW to collect and distribute money to VGW from Florida citizens who have gambled on VGW's internet casino websites, including Plaintiff and the Class.  In addition, FIS distributed gambling winnings to Florida citizens on behalf of VGW.

142.   At all times material to this Complaint, FIS, the payment processing partner or vendor for VGW, promoted, set up and participated in conducting the bookmaking and gambling transactions of Florida citizens with VGW, including those of Plaintiff and the Class.  Therefore, FIS is jointly and severally liable for the acts of unfair and deceptive trade practices of VGW that Plaintiff and the Class are authorized to sue for violations of Sections  849.09, 849.14, 849.15, 849.23 or 849.25, relating to gambling and bookmaking as "criminal activity" for which a person who has been damaged may seek civil relief pursuant to Section 772.102(a) 31 and 772.104 of the Florida statutes.

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests a judgment against VGW and FIS, awarding Plaintiff and the Class threefold of all monies that Plaintiff and the Class lost to VGW or threefold of the damages suffered by Plaintiff and the Class, together with interest, expenses, costs, and

reasonable attorney's fees, to the extent allowable by law, and other just and appropriate relief.

## COUNT IV

## CIVIL CONSPIRACY

143.   Alternatively, Plaintiff, on behalf of himself and the Class, incorporates the foregoing allegations in paragraphs 1-96 as if fully set forth herein and sues VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED (previously and herein referred to collectively as "VGW") and FIDELITY NATIONAL INFORMATION SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY, LLC and WORLDPAY, INC. (previously and herein referred to collectively as "FIS") collectively and each independently for Civil Conspiracy.

144.   VGW and FIS together in concert conspired to cause Plaintiff and the Class to utilize VGW's websites to commit illegal or unlawful acts of gambling and bookmaking as part of a scheme to deprive Plaintiff's and the Class's money.

145.   By unlawful means, VGW knowingly and willfully misrepresented to Plaintiff and the Class that Florida citizens who played the casino games of chance on VGW's websites were doing so legally and not in violation of Florida's laws regarding gambling, Chapter 849 of the Florida Statutes.

146.   VGW's websites misleadingly advertise that VGW's games of chance are legally permitted for Florida citizens to play when VGW knew, or through the exercise of reasonable care or investigation could or might have ascertained, that VGW's advertisements and representations were untrue or misleading.

147.   VGW made the false statements or misleading advertisements to Plaintiff and the Class with the intent, purpose, either directly or indirectly, of inducing Plaintiff, the Class and Florida citizens to enter into gambling transactions as defined by Chapter 849 of the Florida Statutes or to play the unlawful internet casino style games of chance.

148.   VGW's statements and advertisements on VGW's websites where VGW claimed that participation in the games of chance were legal and not in violation of Florida law constituted misleading advertising and acts of fraud and obtaining money or property under false pretenses, in violation of Section 817.41 of the Florida Statutes.

149.   VGW's misrepresentations and misleading advertising are actionable torts under Florida law.

150.   VGW's misleading advertisements constitute violations of Sections 772.102 and 772.104 of the Florida statutes and thereby are actionable torts under Florida law.

151.   At all times material to this Complaint, FIS had knowledge that VGW was offering for sale and profit services and items, to wit GC and SC, to be used on VGW's internet gambling websites.

152.   At all times material to this Complaint, FIS knew, or through the exercise of reasonable care or investigation could or might have ascertained, that VGW's advertisements and representations were untrue or misleading when VGW advertised to Florida citizens, including Plaintiff and the Class, that play or participation on VGW's websites were legal within the state of Florida.

153.   Despite knowledge of VGW's misleading advertising, fraudulent acts, and violations of Chapter 849 of the Florida statutes, FIS actively worked in concert with VGW to obtain money from Plaintiff, the Class and Florida citizens, process payments of that money, and distribute money in the way of gambling winnings and losses to VGW.

154.   The acts of VGW and FIS done in concert to deprive Florida citizens, Plaintiff and the Class of money through the promotion and advertising of VGW's gambling websites, and the process of collecting and distributing money done by FIS constitute overt acts in furtherance of a civil conspiracy, which is actionable under Florida law.

155.   Because of the civil conspiracy between VGW and FIS, Plaintiff and the Class have suffered damages.

WHEREFORE, Plaintiff, on behalf of himself and the Class seeks a judgment against VGW and FIS, awarding Plaintiff and the Class all monies that Plaintiff and the Class lost to VGW or the damages suffered by Plaintiff and the Class, together with interest, expenses, costs, and reasonable attorney's fees, to the extent allowable by law, and other just and appropriate relief.

**COUNT V**

**VIOLATIONS OF SECTION 772.104 OF THE FLORIDA STATUTES**

**CIVIL CAUSE OF ACTION – CIVIL REMEDIES FOR CRIMINAL**

**PRACTICES ACT**

156.   Alternatively, Plaintiff, on behalf of himself and the Class, incorporates the foregoing allegations in paragraphs 1-96 and 144-155 as if fully set forth herein and sues VGW HOLDINGS LIMITED, including its subsidiaries VGW MALTA LIMITED, VGW LUCKYLAND INC., and VGW GP LIMITED (previously and herein referred to collectively as "VGW") and FIDELITY NATIONAL INFORMATION SERVICES, INC., a Florida corporation, including its subsidiary WORLDPAY, LLC and WORLDPAY, INC. (previously and herein referred to collectively as "FIS") collectively and each independently under the Civil Remedies For Criminal Practices Act.

157.   Section 772.102(a) 22 of the Florida Statutes identifies violations of Chapter 817 of the Florida Statutes, relating to gambling as "criminal activity" for which a person who has been damaged may seek civil relief.

158.   Section 817.41 of the Florida Statutes identifies the type of misleading advertising which may be sued for under Sections 772.102 and 772.104 of the Florida Statutes.

159.   By their conspiracy, acts, and misleading advertising described in paragraphs 144-155, above, VGW and FIS violated Section 772.104 of the Florida Statutes and as defined in Section 772.102(1) of the Florida Statutes.

160.   VGW and FIS have caused economic damages in the form of money losses and damages to Plaintiff and the Class specifically in violation Section 772.104 of the Florida Statutes, and Plaintiff and the Class have the right to sue VGW and FIS for damages because of VGW's and FIS' conspiracy and misleading advertising.

161.   Section 772.104(1) of the Florida Statutes provides that Plaintiff and the Class have a right to sue and recover damages from VGW and FIS in an amount of "threefold of the actual damages" that Plaintiff and the Class incurred, or a "minimum damages of $200" plus reasonable attorney's fees and court costs for the losses and economic damages that Plaintiff and the Class have sustained because of VGW's and FIS' violations of Section 772.103 of the Florida Statutes.

162.    As a direct and proximate result of VGW's and FIS' conspiracy and misleading advertising as defined in Section 817.41 of the Florida statutes, Plaintiff and each member of the Class have lost money because of fraud by VGW and FIS and Plaintiff and the Class lost money under false pretenses by wagering at VGW's games of chance. Plaintiff and the Class are entitled to recover threefold the amount of their actual losses or damages.

163.    FIS has admitted and advertised to the public that it is a payment processing partner for VGW and that it has been actively working in coordination with VGW to collect and distribute money to VGW from Florida citizens who have gambled on VGW's internet casino websites, including Plaintiff and the Class.  In addition, FIS distributed gambling winnings to Florida citizens on behalf of VGW.

164.    At all times material to this Complaint, FIS, the payment processing partner or vendor for VGW, promoted, set up and participated in conducting the gambling transactions of Florida citizens with VGW, including those of Plaintiff and the Class.  Therefore, FIS is jointly and severally liable for the acts of  VGW that Plaintiff and the Class are authorized to sue for and seek civil relief pursuant to Section 772.102(a) 22 and 772.104 of the Florida statutes.

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests a judgment against VGW and FIS, awarding Plaintiff and the Class threefold of all monies that Plaintiff and the Class lost to VGW or threefold of the damages

suffered by Plaintiff and the Class, together with interest, expenses, costs, and

reasonable attorney's fees, to the extent allowable by law, and other just and

appropriate relief.

## **DEMAND FOR JURY TRIAL**

 Plaintiff demands trial by jury of any and all issues in this action so triable by

Florida law.


Dated this 25th day of August 2024


Respectfully submitted,

**/s/ Dennis Wells**

Dennis Wells
Webb & Wells, P.A.
P.O. Box 915432
Longwood, Florida 32779
Tel:  (407) 865-5600
Florida Bar No.: 368504
Email: denniswells2@icloud.com
Attorney for Plaintiff
ERIC A. KNAPP


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of August 2024, I served by email and I
electronically filed the foregoing with the Clerk of the Court by using the CMECF
system which will serve a copy of the foregoing by e-mail to Defendants' VGW
Group's counsel: T. Todd Pittenger at todd.pittenger@gray-robinson.com, Kelly J.
H. Garcia at kelly.garcia@gray-robinson.com, Gregory D. Beaman (pro hac vice)

at gbeaman@orrick.com, and Behnam Dayanim (pro hac vice), at
Bdayanim@orrick.com, and to counsel for Fidelity National Information Services
and Worldpay, Inc., Ian M. Ross at iross@sidley.com, and Kyle Tanzer at
ktanzer@sidley.com.

**/s/ Dennis Wells**
Dennis Wells
Webb & Wells, P.A.
P.O. Box 915432
Longwood, Florida 32779
Tel:   (407) 865-5600
Florida Bar No.: 368504
Email: denniswells2@icloud.com
Attorney for Plaintiff
ERIC A. KNAPP

# EXHIBIT "A"

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:55 AM
**To:** support@chumbacasino.com
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp, My email address is *rickknapp@outlook.com.* My postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring individual arbitration, opting out of any clause and/or waiver that prohibits participation in class action lawsuits, opting out of any clause and/or waiver that prohibits participation in class action arbitration, opting out of any clause and/or waiver that prohibits acting in the capacity as a private attorney general or third party seeking to recover losses. Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to play on your site because you have confirmed that the site is legally operating in my state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:56 AM
**To:** 'arbitrationoptout@chumbacasino.com' <arbitrationoptout@chumbacasino.com>
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp, My email address is *rickknapp@outlook.com.* My
postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the
clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring
individual arbitration, opting out of any clause and/or waiver that prohibits participation in
class action lawsuits, opting out of any clause and/or waiver that prohibits participation in
class action arbitration, opting out of any clause and/or waiver that prohibits acting in the
capacity as a private attorney general or third party seeking to recover losses.
Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the
website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to
play on your site because you have confirmed that the site is legally operating in my
state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:55 AM
**To:** arbitrationoptout@luckylandslots.com
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp. My email address is *rickknapp@outlook.com.* My postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring individual arbitration, opting out of any clause and/or waiver that prohibits participation in class action lawsuits, opting out of any clause and/or waiver that prohibits participation in class action arbitration, opting out of any clause and/or waiver that prohibits acting in the capacity as a private attorney general or third party seeking to recover losses. Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to play on your site because you have confirmed that the site is legally operating in my state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:56 AM
**To:** support@luckylandslots.com
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp. My email address is ***rickknapp@outlook.com.*** My postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring individual arbitration, opting out of any clause and/or waiver that prohibits participation in class action lawsuits, opting out of any clause and/or waiver that prohibits participation in class action arbitration, opting out of any clause and/or waiver that prohibits acting in the capacity as a private attorney general or third party seeking to recover losses. Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to play on your site because you have confirmed that the site is legally operating in my state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:59 AM
**To:** arbitrationoptout@globalpoker.com
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp. My email address is *rickknapp@outlook.com.* My postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring individual arbitration, opting out of any clause and/or waiver that prohibits participation in class action lawsuits, opting out of any clause and/or waiver that prohibits participation in class action arbitration, opting out of any clause and/or waiver that prohibits acting in the capacity as a private attorney general or third party seeking to recover losses. Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to play on your site because you have confirmed that the site is legally operating in my state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

**From:** Rick Knapp
**Sent:** Thursday, November 30, 2023 10:59 AM
**To:** support@globalpoker.com
**Subject:** "Opting out and declining arbitration"

Hello my name is Rick Knapp.  My email address is ***rickknapp@outlook.com.***  My postal address is 308 Wild Olive Lane, Longwood, FL 32779. I am opting out of the clause and/or waiver requiring arbitration, opting out of the clause and/or waiver requiring individual arbitration, opting out of any clause and/or waiver that prohibits participation in class action lawsuits, opting out of any clause and/or waiver that prohibits participation in class action arbitration, opting out of any clause and/or waiver that prohibits acting in the capacity as a private attorney general or third party seeking to recover losses. Furthermore, I am opting out entirely of clause 23, and I am opting out of any part of the website terms that I am permitted to opt out of.

Furthermore, as is specified in clause 4 I recognize that I am being granted a license to play on your site because you have confirmed that the site is legally operating in my state. If it was not, then 4.4 would not allow me to play. Please confirm that fact.

# EXHIBIT "B"

Who we serve ⌄   Solutions we provide ⌄   Resources ⌄   Explore more ⌄          Careers    🔍   **Contact us**

FINTECH INSIGHTS

# VGW delivers flexible payment options for players with Worldpay

Back to Previous ›




## About VGW

VGW is a social gaming operator with a predominantly North American customer base. They have two mainline businesses – Chumba and Global Poker – each of which has gained a vast and loyal following online.



GROW WITH EXPERTS

And we've seen a step change as part of that integration

## Why VGW chose Worldpay as its payment partner

### Full suite of services

VGW wanted a provider that would help them optimise costs, improve their data, reduce user friction and deliver flexible payment options for players. With a full suite of payment services on offer, including a gateway connection, card acquiring capabilities, fraud protection, alternative payment methods, global payouts through Bankout and increased data insight with Pazien, Worldpay were in a position to provide all of those benefits and more.

### Intelligent data input

Worldpay delivered intelligent data for VGW to analyse, which enabled them to assess transactions to find out whether they were fraudulent or not. This was especially important for VGW as they have two different websites which each allow access to thousands of player profiles. The more data VGW had access to, the better they were able to identify fraud and reduce losses.

### Top-class performance

This additional use of data also extended to Pazien – a new Worldpay product which gives VGW's data science team access to vital transaction figures and allows them to compare Worldpay's performance with the incumbent eWallet. Partly because of the results uploaded to Pazien, VGW have continued to increase Worldpay's share of their payment optimisation business.



**Report**

Find out more about how Worldpay helps VGW win new players.

Download

## ADVANCING THE WAY THE WORLD PAYS, BANKS AND INVESTS

Let's start a
### conversation

Let's work together to reach your goals. Reach out to us, and we will be happy to help.

**HEADQUARTERS**
Jacksonville, Florida
United States

**STAY CONNECTED**

Get in
### touch

We are here to help you and your business. Contact us using the button below.

Learn More

Privacy Center    Cookies    Terms of Use    Login    Contact Us    Preference Center    Vulnerability Disclosure

Do Not Sell or Share My Personal Information

©2023 FIS. Advancing the way the world pays, banks and invests™

Manage Cookie Preferences