UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ERIC A KNAPP,**

        **Plaintiff,**

**v.**                                  **Case No.  6:24-cv-413-CEM-DCI**

**VGW HOLDINGS LIMITED,
VGW MALTA LIMITED, VGW
LUCKYLAND INC, VGW GP
LIMITED, FIDELITY NATIONAL
INFORMATION SERVICES,
INC., WORLDPAY, INC. and
WORLDPAY, LLC,**

        **Defendants.**

_____/

**ORDER**

THIS CAUSE is before the Court on Plaintiff's Motion to Remand (Doc. 18)
to which Defendants VGW Holdings Limited, VGW Malta Limited, VGW
Luckyland Inc, and VGW GP Limited ("the VGW Defendants") filed a Response
(Doc. 30) and Defendant Fidelity National Information Services, Inc. ("FIS") filed
a Response (Doc. 32). This cause is also before the Court on Defendant Worldpay,
Inc.'s Motion to Dismiss ("Worldpay, Inc.'s Motion," Doc. 66), to which Plaintiff
filed a Response (Doc. 71) and Defendant Worldpay, Inc. file a Reply (Doc. 78).
This cause is also before the Court on the VGW Defendants' Motion to Transfer, in
part, and Otherwise Dismiss ("VGW Defendants' Motion," Doc. 61), to which

Plaintiff filed a Response (Doc. 67) and the VGW Defendants filed a Reply (Doc. 74). This cause is also before the Court on Defendants FIS and Worldpay, LLC's Joint Motion to Transfer and Dismiss ("FIS and Worldpay, LLC's Motion," Doc. 65), to which Plaintiff filed a Response (Doc. 69) and Defendants FIS and Worldpay, LLC filed a Reply (Doc. 77). For the reasons below, Plaintiff's Motion to Remand will be denied, Worldpay Inc.'s Motion will be granted, the VGW Defendants' Motion will be granted, and FIS and Worldpay, LLC's Motion will be granted.

## I.    BACKGROUND

Plaintiff brings this putative class action against Defendants that allegedly operate internet gambling websites in violation of Florida law. Plaintiff seeks refund of "all of VGW's gambling operations, agreements, and the funds it has received from Plaintiff and the Class." (State Compl., Doc. 1-2, at 46). After Plaintiff originally filed this action in State Court, (Doc. 1-2), Defendants removed the case to this Court, (Notice of Removal, Doc. 1). Plaintiff moved to remand. (Doc. 18). Subsequently, Plaintiff filed an Amended Complaint bringing four counts—Violation of Chapter 849 of the Florida Statues (Count I); Violation of the Florida Deceptive and Unfair Trade Practices Act (Count II); Violation of the Civil Remedies for Criminal Practices Act (Count III); and Civil Conspiracy (Count IV). (Am. Compl., Doc. 58). For each of the three games at issue here, Plaintiff agreed to a set of Terms and Conditions (collectively, "the Terms"), which contained forum selection and choice of law clauses. Pursuant to the forum selection clause, the VGW

Defendants, FIS, and Worldpay, LLC moved to transfer certain claims pursuant to 28 U.S.C. § 1404 and dismiss others on *forum non conveniens* grounds. Worldpay, Inc. moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (b)(4), (b)(5), (b)(6), and 17(b)(2).

## II.    PLAINTIFF'S MOTION TO REMAND

### A.    Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Pursuant to CAFA, federal courts have original jurisdiction over class actions where two conditions are met: the aggregate amount in controversy exceeds $5 million, and the parties have minimal diversity—meaning at least one plaintiff is diverse from at least one defendant." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021) (citing 28 U.S.C. § 1332(d)(2), (6)).

In determining the amount in controversy, the relevant question is whether the plaintiff seeks damages in excess of the jurisdictional limit, not whether the plaintiff will actually recover sufficient damages. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). In that vein, "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Id.* (citing cases).

A defendant seeking to remove a case bears the burden of proving that the federal district court has original jurisdiction. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754. "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010) (quoting *Pretka*, 608 F.3d at 754).

"Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Any doubt as to "jurisdiction should be resolved in favor of remand to state court." *Id.*

## B.    Analysis

### 1.    *Jurisdictional Amount*

The Eleventh Circuit "ha[s] held that, in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007). Plaintiff only challenges that Defendants have not met their burden to show the jurisdictional amount exceeds $5 million, arguing that he only seeks compensation for *losses* while the notice of removal

included purchases in calculating its total. (Doc. 18 at 6). This argument has been twice addressed and twice rejected by courts within the Eleventh Circuit. *See Doe v. VGW Malta Ltd.*, No. 1:24-cv-2184-TWT, 2023 U.S. Dist. LEXIS 210770 (N.D. Ga. Nov. 28, 2023); *Kennedy v. VGW Holdings Ltd.*, No. 1:23-cv-3226-TWT, 2024 U.S. Dist. LEXIS 186897 (N.D. Ga. Oct. 15, 2024).

As explained in *Kennedy*, the *Doe* Court "found that this argument ran contrary to the plaintiff's allegations in the complaint, where he stated that '*all of* Defendants' gambling operations, agreements, and funds [they have] received from Plaintiff and the Class are void and subject to refund or return to Plaintiff and the Class in order to reimburse Plaintiff and the Class for their losses during the preceding six months.'" 2024 U.S. Dist. LEXIS 186897, at *6–7 (alteration in original) (emphasis added). The *Kennedy* Court rejected the plaintiff's argument because she sought "'a judgment . . . for *all* money paid or property delivered to each and all of the above-named Defendants as authorized by O.C.G.A. § 13-8-3(b) for the monetary losses incurred' by the Plaintiff and the proposed class." *Id.* at *7 (emphasis added).

Despite claiming he only seeks losses, Plaintiff similarly states "*all of* VGW's gambling operations, agreements, and the funds it has received from Plaintiff and the Class are void and subject to disgorgement, refund or return to Plaintiff and the Class in order to reimburse Plaintiff." (State Compl., Doc. 1-2, at 46 (emphasis added)). "Therefore, because the amount in controversy and the numerosity

requirements are clearly stated in the notice of removal and supporting declaration of [VGW Holdings Limited's General Counsel] Mr. Thunder and are supported by the Plaintiff's allegations in the Complaint, the Court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), [ ] and that removal was proper pursuant to 28 U.S.C. § 1441 and § 1446." *Kennedy*, 2024 U.S. Dist. LEXIS 186897, at *8; (*see* Notice of Removal, Doc. 1 at 4; Thunder Decl., Doc. 1-1, at 1, 2–3 (averring "more than 100 Florida users [ ] made a purchase in the VGW Group's Games" and "[t]he total amount of purchases . . . exceeds $5,000,000")). Nevertheless, Plaintiff argues that the Court must remand this case because of the local controversy and home state exceptions. Plaintiff bears the burden of proving that these exceptions apply. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("[P]laintiffs bear the burden of establishing that they fall within CAFA's local controversy exception.").

### 2. *Local Controversy*

Even if the Court has jurisdiction pursuant to CAFA, Plaintiff argues the local controversy exception applies. (Doc. 18 at 7). The local controversy "exception requires a district court to decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)). In addition, "during the 3-year period

preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). It is this final requirement that proves fatal to Plaintiff's argument.

Plaintiff argues this case should be remanded "because this is the first and only class action that Plaintiff . . . or others have filed against any of the defendants." (Doc. 18 at 10). However, as Plaintiff acknowledges, a previous class action was filed against certain VGW Defendants involving similar allegations. (*Id.* (citing Middle District of Florida case *Doe v. VGW Malta Ltd.*, No. 6:23-cv-1360-WWB-DCI)). Because the case was voluntarily dismissed without prejudice, Plaintiff argues the action was essentially never brought. *See United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1303 (11th Cir. 2019) ("A voluntary dismissal without prejudice 'renders the proceedings a nullity and leaves the parties as if the action had never been brought.'" (quoting *Univ. of S. Ala.*, 168 F.3d at 409)). Nevertheless, a class action in this district was still *filed*. *See* 28 U.S.C. § 1332(d)(4)(A)(ii).

Even if the Court ignores the case in this district, Defendant also points to the previously cited Northern District of Georgia case *Doe v. VGW Malta Ltd.*, 2023 U.S. Dist. LEXIS 210770. Although that case was filed in Georgia and involved different laws, "CAFA does not require common questions or law or fact. CAFA does not require identical parties. For an action to qualify as another 'class action'

for purposes of the local controversy exception, the action need only concern the 'same or similar factual allegations against any of the defendants on behalf of the same or other persons.'" *McAteer v. DCH Reg'l Med. Ctr.*, No. 2:17-cv-00859-MHH, 2018 WL 1089873, at *6 (N.D. Ala. Feb. 26, 2018) (emphasis in original) (quoting 28 U.S.C. § 1332(d)(4)(A)(ii)). The factual allegations there, as noted above, were indeed similar to the instant case. *See Doe v. VGW Malta Ltd.*, 2023 U.S. Dist. LEXIS 210770, at *2 ("Plaintiff claims that the games violate Georgia laws that prohibit casino gambling and seeks a refund of the purchases he made playing VGW's games on behalf of himself and a class of Georgia residents who also made purchases playing the games."). Therefore, Plaintiff's argument that this case be remanded under local controversy exception is rejected.

### 3.    *Home State Exception*

Plaintiff also argues that the home state exception applies. (Doc. 18 at 12). "The home state exception applies if 'two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017) (quoting 28 U.S.C. § 1332(d)(4)(B)). To determine if a defendant is a "primary defendant" the Court must ask "whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Id.* at 1336 (alteration in original)

(quoting *Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 505–06 (3d Cir. 2013)).

Plaintiff argues the FIS and VGW Holdings Limited are the primary defendants here. (Doc. 18 at 12). For the exception to apply, both must be citizens of Florida. *See Hunter*, 859 F.3d at 1335. However, both FIS and VGW Holdings Limited counter that FIS is not a primary defendant because it is "at most only secondarily liable to VGW [Holdings Limited]" and that even if FIS was a primary defendant, VGW Holdings Limited is a citizen of Australia not Florida. (Doc. 30 at 12; Doc. 32 at 4). VGW Holdings Limited "is a limited company incorporated and headquartered in Australia." (Doc. 1-1 at 1).

"The true nature of a foreign limited company may vary depending on its treatment in the country of origin." *Karpel v. Knauf Gips KG*, No. 21-24168-Civ-Scola, 2023 WL 3845507, at *2 (S.D. Fla. June 6, 2023) (citing *Serendipity at Sea, LLC v. Underwriters at Lloyd's of London*, No. 21-11733-AA, 2022 U.S. App. LEXIS 2512, at *6–7 (11th Cir. Jan. 26, 2022)). However, this Court need not determine how a public limited company incorporated and headquartered in Australia corresponds to the various business organizations of the United States. If it is akin to a United States corporation, then it is obviously an Australian citizen. 28 U.S.C. § 1332(c)(1). But even if it is akin to a non-corporate United States entity, such as a limited liability company, and its shareholders' citizenship was dispositive of citizenship, *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374

F.3d 1020, 1022 (11th Cir. 2004), VGW Holdings Limited has no Florida shareholders, (Thunder Suppl. Decl., Doc. 31, at 1). So, VGW Holdings Limited is a primary defendant and is not a citizen of Florida. Therefore, Plaintiff's argument that this case be remanded under the home state exception is also rejected.

### 4.    *Comity Abstention*

Finally, Plaintiff argues this case should be remanded under § 1332(d)(3)'s discretionary exception under the comity abstention doctrine. His argument proceeds as follows: Count I was brought under Chapter 849 of the Florida Statues. (Doc. 1-2 at 45). Two sections of that Chapter have been repealed, and a federal court found that repeal foreclosed a private right of action under the statute. *See Crawley v. Clear Channel Outdoor, Inc.*, No. 8:10-cv-01238-T-EAK-MAP, 2011 WL 748162, at *2 (M.D. Fla. Feb. 24, 2011) ("[T]he statute giving rise to a cause of action has been repealed, and as such, plaintiffs cannot pursue their claims because they are no longer authorized under Florida law."). However, Plaintiff argues that the state legislature in repealing those sections only meant to amend the statute of limitations. (Doc. 18 at 17). Therefore, Plaintiff argues state court is the appropriate forum to make this determination of state law. (*Id.*).

Plaintiff cites to several cases from this district in support of applying the comity abstention doctrine here. However, none of those cases apply the doctrine in a CAFA case. (*Id.* at 20). Nevertheless, at least one court in the Northern District of Georgia followed persuasive authority from the Seventh Circuit in remanding a

CAFA case on comity abstention grounds. *Gwinnett Cnty., Ga. v. Netflix, Inc.*, No.
1:21-cv-21-MLB, 2021 U.S. Dist. LEXIS 146527, at *12 (N.D. Ga. Aug. 5, 2021)
("The Seventh Circuit has also recognized that CAFA is 'such a jurisdictional
statute' that must be read with 'sensitivity to federal-state relations.'" (quoting *Sask.
Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017)) (internal
quotation marks omitted)).

The doctrine of comity abstention encourages federal courts to avoid
"interfer[ing] . . . with the fiscal operations of the state governments . . . in all cases
where the Federal rights of the persons could otherwise be preserved unimpaired."
*Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 422 (2010) (quoting *Boise Artesian
Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)). "Comity's constraint
has particular force when lower federal courts are asked to pass on the
constitutionality of state taxation of commercial activity." *Id.* at 421.

In *Levin*, the Supreme Court cited the following factors to determine whether
the comity doctrine applied: (1) if the defendant sought federal-court review of
matters "over which [the state] enjoys wide regulatory latitude," *id.* at 431; (2) if the
defendant only sought "federal-court aid in an endeavor to improve their competitive
position," *id.* at 431; and (3) if "the [state] courts are better positioned than their
federal counterparts to correct any violation because they are more familiar with
state legislative preferences," *id.* at 431–32. "Individually, these considerations may

not compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process." *Id.* at 432.

Although the state has wide regulatory authority over gambling, *see generally* Chapter 849 of the Florida Statutes, Defendant here is not seeking to improve its competitive position nor does it appear that state courts are more familiar with state legislative preferences here. Furthermore, "federal courts routinely decide novel state-law issues in diversity actions." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling, Inc.*, 12 F.4th 1278, 1289 (11th Cir. 2021). In fact, Plaintiff cited a federal-court opinion from this district on the very issue Plaintiff argues demands remand on comity abstention grounds. *See Crawley*, 2011 WL 748162. Because this case is also not one that involves interference with the state's fiscal operations or the constitutionality of state taxation of commercial activity, comity's constraint does not weigh as heavily on this Court. *See Levin*, 560 U.S at 421–22. Therefore, Plaintiff's Motion to Remand is due to be denied.

## III.   WORLDPAY, INC.'S MOTION

Worldpay, Inc. makes a limited appearance to argue that it cannot be served with process or sued because it merged into Worldpay, LLC and should therefore be dismissed from this action. (Doc. 66 at 1). "Capacity to sue or be sued is determined . . . for a corporation, by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Worldpay, Inc. was a Delaware corporation. ("Entity Details," Doc. 38-1, at 2). Thus, "[t]he law of Delaware determines [its] capacity to be sued."

*Hancock Shoppes, LLC v. Retained Subsidiary One, LLC*, No. 2:17-cv-364-FtM-99CM, 2018 U.S. Dist. LEXIS 243925, at *2 (M.D. Fla. Feb. 26, 2018) (citing Fed. R. Civ. P. 17(b)(2)). Under Delaware law, "[w]hen a consolidation or merger has taken place under the statute, the old corporations have their identity absorbed into that of the new corporation or the one into which they were merged." *Argenbright v. Phx. Fin. of Iowa*, 187 A. 124, 292 (Del. 1936) (cited by the court in *Hancock Shoppes*, 2018 U.S. Dist. LEXIS 243925, at *2–3); *see also* Del. Code Ann. tit. 8 § 259 ("When any merger or consolidation shall have become effective under this chapter, . . . the separate existence of all the constituent corporations . . . shall cease and the constituent corporations shall become a new corporation . . . .").

In support of its argument, Worldpay, Inc. cites to *Sevits v. McKiernan-Terry Corp. (N.J.)*, 264 F. Supp. 810 (S.D.N.Y. 1966). While the case is dated and from outside this district, the *Sevits* Court applies Delaware law, which has not changed, and addresses analogous circumstances. There, two corporations were named as defendants—the first "was merely the former name of" the second. *Id.* at 811. When the successor corporation merged into another, the court held that its "separate corporate existence . . . ceased upon merger." *Id.* at 812. Worldpay, Inc merged "with and into" Worldpay, LLC on June 30, 2020. ("Certificate of Merger," Doc. 50-1, at 11–13). "In view of the fact that [Worldpay, Inc.] had ceased to exist [it] could not properly be served with process. Fed. R. Civ. P. 12(b)(4) & (5); neither could the court have in personam jurisdiction over [it]. Fed. R. Civ. P. 12(b)(2).

Further, the complaint, as amended, could not state a claim against [Worldpay, Inc.], since [it] had ceased to exist. Fed. R. Civ. P. 12(b)(6)." *Sevits*, 264 F. Supp. at 812. "In addition, [ ] [Worldpay, Inc.] lacked capacity to be sued under Delaware law. Fed. R. Civ. P. 17(b)." *Id.* Therefore, Worldpay, Inc. will be dismissed as a defendant in this case.

### IV.    MOTIONS TO TRANSFER AND DISMISS

The VGW Defendants move to transfer and dismiss this case pursuant to the forum selection clause. They move to transfer this case to the District of Delaware with respect to VGW Luckyland Inc, and the derivative claims against VGW Holdings Limited, and move to dismiss this case under the doctrine of *forum non conveniens* with respect to VGW Malta Limited and VGW GP Limited, and the derivative claims against VGW Holdings Limited. (Doc. 61 at 2). FIS and Worldpay, LLC move to transfer the claims related to their payment services for VGW Luckyland Inc to the District of Delaware, and they move to dismiss the claims related to their payment services for VGW Malta Limited and VGW GP Limited on *forum non conveniens* grounds. (Doc. 65 at 16).

### A.    Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Supreme Court held § 1404(a) is the proper

"mechanism for enforcement of forum-selection clauses that point to a particular federal district," while "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59, 60 (2013). "[P]roper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Therefore, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62 (footnote omitted).

First, the Court must determine if the forum selection clause is valid. *See Loeffelholz v. Ascension Health, Inc.*, 34 F. Supp. 3d 1187, 1189–90 (M.D. Fla. 2014). Then, if a valid forum selection clause exists, the Court must apply a modified § 1404(a) analysis to determine if there is a reason not to transfer the case to the chosen forum. *See Atl. Marine*, 571 U.S. at 63.

## B.    Validity of Forum Selection Clause

"Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281

(11th Cir. 2009) (per curiam). "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law . . . not state law." *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (per curiam). "A forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. "The burden is on the party resisting the enforcement of a forum selection clause to establish fraud or inequitable conduct sufficient to bar enforcement of the clause." *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) (per curiam).

The forum selection clause here is numbered Clause 24.17 in all three Terms at issue and provides the following:

> Subject to clause 23, the parties agree that any dispute, controversy or claim arising out of or in connection with these Terms of Service, or the breach, termination or invalidity of these Terms of Service, will be submitted exclusively to the courts *in the State of Delaware in the United States*, and you and we consent to the venue and personal jurisdiction of those courts. Notwithstanding the foregoing, the parties agree that either party may move to compel arbitration or to enforce an arbitral award issued hereunder before any court of competent jurisdiction.

("Luckyland Slots Terms," Doc. 61-1, at 25 (emphasis added); "Chumba Casino Terms," *id.* at 45 (replacing "the State of Delaware in the United States" with "Malta"); "Global Poker Terms," *id.*, at 62 (same)). VGW Luckyland, Inc is party

to the Luckyland Slots Terms. (Doc. 61-1 at 10). VGW Malta Limited and VGW GP Limited are party to both the Chumba Casino Terms and Global Poker Terms. (*Id.* at 28–29, 48).

Plaintiff seemingly takes aim at the first factor, arguing that the forum selection and choice of law provisions should not be enforced because the Defendants fraudulently induced Plaintiff into agreeing to the Terms. (Doc. 67 at 10–12). This is because the Terms "falsely state that VGW Group does not offer real money gambling and that VGW Group operates legally in Florida and Delaware." (*Id.* at 10–11). However, there is no indication that the forum selection and choice of law clauses were formed by fraud. And the "court will invalidate a choice clause only if 'the inclusion of that clause in the contract was the product of fraud or coercion.'" *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis in original)).

Next, Plaintiff attacks the third factor and proceeds to argue the enforcement of those provisions would eliminate his ability to obtain an effective remedy, arguing Delaware law is inadequate. (Doc. 67 at 12–13, 15–17). However, "[o]nly remedies that are 'so inadequate that enforcement would be fundamentally unfair' render a chosen forum inadequate." *Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 203 (11th Cir. 2019) (quoting *Lipcon*, 148 F.3d at 1297). Plaintiff only asserts that Delaware law would limit his recovery. (Doc. 67 at 12–13). "As the Eleventh Circuit

has stated, '[w]e will not invalidate choice clauses . . . simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States.'" *Smith v. Mt. Hawley Ins. Co.*, No. 8:22-cv-1386-CEH-TGW, 2022 U.S. Dist. LEXIS 205229, *14–15 (M.D. Fla. (alteration in original) (quoting *Lipcon*, 148 F.3d at 1297).

Still in this line of argument, Plaintiff takes issue with the phrasing of the choice of law clause, identical in all the Terms, which provides:

> These Terms and Conditions, your use of the Platform and our entire relationship will be governed, and interpreted in accordance with the laws of the State of Delaware in the United States, without regard for its choice of conflict of law principles.

(Doc. 61-1 at 25, 44, 62). Plaintiff argues that the courts of Malta are not obligated to apply "laws of the State of Delaware" because Malta is not "in the United States." (Doc. 67 at 15–16). However, Plaintiff cites no authority in support of this tortured reading. The VGW Defendants argue, however, that such phrasing is common and provide authority from this district involving a similarly phrased clause. *See, e.g.*, *Counter Active, Inc. v. Tacom, L.P.*, No. 8:07-cv-00338-T-17MSS, 2007 WL 9723866, at *2 (M.D. Fla. June 25, 2007) ("This agreement shall be governed, construed and interpreted in accordance with the laws of the State of Minnesota in the United States."). A plain reading of the text indicates that the modifier "in the United States" refers only to the geographic location of the state of Delaware. The phrase's use in the forum selection clause of the Luckyland Slots Terms lends further

credence to a reading that only identifies geographic location. (Doc. 61-1 at 25 ("any

dispute . . . will be submitted exclusively to the courts in the State of Delaware in

the United States")).

Turning to the fourth factor, Plaintiff goes on to argue that the forum selection

and choice of law clauses should not be enforced because the underlying contracts

are void against public policy as illegal gambling contracts. (Doc. 67 at 2–5).

However, the Eleventh Circuit rejected the same argument in *Rucker v. Oasis Legal

Finance*, 632 F.3d 1231 (11th Cir. 2011). "A forum selection clause is viewed as a

separate contract that is severable from the agreement in which it is contained." *Id.*

at 1238 (citing *Scherk*, 417 U.S. at 519 n.14). Plaintiff's argument that the forum

selection clause is not severable because it is integral to the underlying contract also

fails. (*See* Doc. 67 at 13–15). He cites no binding authority in which a court holds a

forum selection clause integral to a contract that is allegedly void against public

policy. All cited cases address the severability of a forum selection clause in

arbitration agreements. Even if the caselaw cited by Plaintiff extended to these

circumstances, "[t]o decide whether the forum selection clause is integral, [the court]

must consider how important the term was to one or both of the parties at the time

they entered into the agreement." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1350

(11th Cir. 2014). And Plaintiff makes no argument to that effect. As the Eleventh

Circuit later explained, "the parties must litigate the voidness issue in the forum they

have chosen to resolve their disputes—that is, unless the forum-selection clause is

*itself* unenforceable." *AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1293

(11th Cir. 2022) (citing *Rucker*, 632 F.3d at 1238).

Plaintiff also asserts that he properly opted out of the forum selection and

choice of law clauses by sending emails to Defendants per the directions in Clause

23.3 of the Terms. (Doc. 67 at 5–9). The title of Clause 23.3 is "Opt-out of

Agreement to Arbitrate," and it provides the following:

> You may decline this agreement to arbitrate by contacting
> arbitrationoptout@*luckylandslots.com* within 30 days of
> first accepting these Terms of Service and stating that you
> (include your first and last name, email address and postal
> address) decline this arbitration agreement. By opting out
> of the agreement to arbitrate, you will not be precluded
> from playing the Games, but you and VGW Group will
> not be permitted to invoke the mutual agreement to
> arbitrate to resolve Disputes under the Terms of Service
> otherwise provided herein.

(Doc. 61-1 at 23 (emphasis added); *id.* at 42 (replacing "luckylandslots.com" with

"chumbacasino.com"); *id.* at 60 (replacing "luckylandslots.com" with

"globalpoker.com")). Section 23, which contains the clause in question, is titled the

"Dispute Resolution and Agreement to Arbitrate on an Individual Basis." (Doc. 61-

1 at 23, 42, 60). A plain reading of the text of Clause 23.3 shows it does not apply

to Clauses 24.14 and 24.17, which contain the forum selection and choice of law

provisions, are in a separate section of the Terms. Furthermore, as the VGW

Defendants explain, the forum selection clauses "only apply where a user has opted

out of arbitration or the dispute is otherwise not arbitrable." (Doc. 74 at 3).

Therefore, Plaintiff opting out of arbitration has no effect on whether he is bound by the forum selection and choice of law clauses.

**C.    Transfer and Dismissal of Claims Subject to the Forum Selection Clauses**

The Eleventh Circuit considers the following factors when determining whether to transfer a case under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Plaintiff argues that all nine factors must be considered here. (Doc. 67 at 17–19). However, where a valid forum selection clause exists, the traditional analysis is altered in three ways. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 64. "Instead, a court considers only arguments about public-interest factors which rarely will be sufficient to defeat a motion to transfer to the

agreed upon forum." *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-cv-306-J-34JRK, 2014 WL 1268584, at *21 (M.D. Fla. Mar. 27, 2014). Finally, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

"Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 571 U.S. at 62 n.6. The Eleventh Circuit, in a case dealing with *forum non conveniens*, has also noted public interest factors include: "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizen in an unrelated forum with jury duty." *Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1349 (11th Cir. 2021).

"Normally, to obtain a *forum non conveniens* dismissal, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Turner*, 9 F.4th at 1347 (internal quotation omitted). As with the transfer analysis, however, "[t]he presence of a forum selection clause . . . modifies this analysis in important ways." *Id.* at 1347–48. Again, like with transfer, "'the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the

plaintiff bears the burden of establishing that [dismissal] is unwarranted.'" *Id.* at 1348 (quoting *Atl. Marine*, 571 U.S. at 63). "Second, '[a] binding forum-selection clause requires the court to find that the forum *non conveniens* private factors entirely favor the selected forum.'" *Id.* (quoting *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029 (11th Cir. 2014)).

Plaintiff rattles off the nine-factor test but fails to demonstrate "that [the] public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. Of relevance here, Plaintiff argues that "Florida is most familiar with the governing law prohibiting illegal gambling within Florida, and Florida has consistently maintained a strong public policy and police power for enforcement of its FDUTPA and CRCPA claims." (Doc. 67 at 19). Furthermore, Plaintiff argues that "[i]t would be unreasonable and unfair for VGW Group to repeatedly target and entice Florida citizens with illegal gambling and then seek to avoid the very laws that VGW Group fraudulently claims it has complied with, especially since the VGW Group terms and conditions and marketing are solely confined to the U.S. and Canada." (*Id.*). While Florida courts might be more familiar with Florida law, Delaware courts would be more familiar with Delaware law, which controls here per the choice of law clause. And Malta courts are also able to apply Delaware law. (Cremona Decl., Doc. 61-2, at 5–6).

Even if Plaintiff effectively contested the relevant factors, that "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should

control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. Therefore, even if the balance of these factors favors Plaintiff, he has not shown "any extraordinary circumstances that warrant denying" VGW Defendants' Motion. *Bachstein v. Discord, Inc.*, 424 F. Supp. 3d 1154, 1160 (M.D. Fla. 2019).

Plaintiff then argues that VGW Holdings Limited has no basis for requesting an alternate forum because it is not a derivative defendant but rather a primary defendant. (Doc. 67 at 19–21). A non-party to a contract may enforce a forum selection clause if it is sufficiently related to a signatory. *Lipcon*, 148 F.3d at 1299. The non-party "must be closely related to the dispute such that it becomes foreseeable that it will be bound." *Id.* (internal quotation marks omitted). Third-party beneficiary status is not required for a party to be considered closely related. *See id.* A non-party will be bound if its rights are "completely derivative of those of the [signing parties]—and thus directly related to, if not predicated upon the interests of the [signing parties]." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1170 (11th Cir. 2009) (alteration in original) (internal quotation marks omitted).

In *Lipcon*, the Eleventh Circuit found the non-party plaintiffs were closely related to the dispute when they put up collateral for the agreement. 148 F.3d at 1288. An early application of *Lipcon* by a district court in the circuit found a signatory's joint venturer was closely related to the dispute. *Smith v. Pro. Claims, Inc.*, 19 F. Supp. 2d 1276, 1282 (M.D. Ala. 1998). In another case, a court found it was not reasonably foreseeable a non-party bank would be bound by the clause at

issue when it was "not closely related (or controlled) by either party" and was only part of lawsuit because stolen money was deposited in a fraudulent account. *Turro v Advanta IRA Admin., LLC*, No. 5:19-cv-00143-TES, 2019 WL 5727584, at *6 (M.D. Ga. Nov. 5, 2019). VGW Holdings Limited is the parent company of the other VGW Defendants. (Doc. 58 at 4). Plaintiff alleges that VGW Holdings Limited "fully controls and operates its subsidiary companies" and "actively operate[s] and market[s]" the alleged gambling websites. (*Id.* at 3). Thus, there exists a close relationship between VGW Holdings Limited and the other VGW Defendants.

The Court now turns to FIS and Worldpay, LLC's argument seeking transfer of the claims related to VGW Holdings Limited and VGW Luckyland Inc and dismissal of the claims related to VGW GP Limited and VGW Malta Limited. Here, the Terms themselves state the VGW Defendants' "Payment Administration Agent will have the same rights, powers and privileges that [VGW Defendants] have under these Terms of Service and will be entitled to exercise or enforce their rights, powers and privileges as our agent or in their own name." (Doc. 61-1 at 16, 34, 53). "Payment Administration Agent means the service provided through any related body corporate, affiliate, or third party we appoint to act as our agent . . . ." (*Id.* at 10, 28, 48). Plaintiff alleges that FIS and Worldpay, LLC are VGW Defendants' payment processors. (Doc. 58 at 6). As payment processors—that is, Payment Administration Agents—they have the same rights under the Terms as the parties to the Terms. Thus, there also exists a close relationship between FIS and Worldpay,

LLC with the VGW Defendants. Therefore, it is appropriate for VGW Holdings
Limited, FIS, and Worldpay, LLC to enforce the forum selection clause.

Plaintiff asserts that "FIS has waived any claim to invoke a forum selection
clause, choice of law provision, or class action waiver." (Doc. 69 at 9). Not only is
this argument conclusory but also the authority provided by Plaintiff only addresses
waiver of a forum selection clause "in the arbitration context." *Se. Power Grp. v.
Vision 33, Inc.*, 855 F. App'x 531, 534 (11th Cir. 2021).

Because the Court will be granting the motions to transfer and dismiss, it need
not address Defendants' arguments in the alternative regarding the class action
waiver nor that Count I be dismissed for failure to state a claim. Therefore, the VGW
Defendants' Motion will be granted, and FIS and Worldpay, LLC's Motion will be
granted.

## V.    CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion to Remand (Doc. 18) is **DENIED**.

2. Worldpay, Inc.'s Motion to Dismiss (Doc. 66) is **GRANTED**.

3. The claims asserted against Worldpay, Inc. are **DISMISSED without
   prejudice**.

4. The VGW Defendants' Motion to Transfer, in part, and Otherwise
   Dismiss (Doc. 61) is **GRANTED**.

5.  FIS and Worldpay, LLC's Joint Motion to Transfer and Dismiss (Doc. 65) is **GRANTED**.

6.  The claims asserted against VGW Malta Limited and VGW GP Limited are **DISMISSED without prejudice**.

7.  The Clerk is **DIRECTED** to transfer the claims against VGW Holdings Limited, VGW Luckyland Inc, Fidelity Information Services, Inc., and Worldpay, LLC to the United States District Court for the District of Delaware for all further proceedings and to close this file.

**DONE** and **ORDERED** in Orlando, Florida on February 6, 2025.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record